# DECISIONS

OF THE

# Supreme Court of Florida

## JANUARY TERM, A. D. 1900.

THOMAS B. SMITH, APPELLANT, VS. GUCKENHEIMER & SONS, APPELLEES.

Appellate Practice—Abstracts—Power of Appellate Court to make Rule—Homestead Exemption in City.

1.  This court had the power to adopt the rule numbered twenty for the submission of civil causes upon abstracts of the record, adopted September 16th, 1895, and amended on February, 17th, 1897. Such rule is as binding upon the court as it is upon litigants, and this court is bound to observe its provisions in the adjudication of causes to which such rule is applicable. (Carter, J., dissenting.)

2.  Under section 1, Article X, Constitution of 1885, the exemption of a homestead in an incorporated city or town does not extend to any other improvements or buildings than are comprehended under the terms residence and business house, of the owner, and where the excessive improvemnts or buildings are not physically connected with the residence or business house, such improvements or buildings and the land upon which they are situated, may be sold under execution for the owner's debts.

3.  Under section 1, Article X, Constitution of 1885, the exemption of a homestead in an incorporated city or town does not extend to improvements other than such as constitute the residence and business house of the owner, nor to the land upon which they are situated, even though such improvements are inseparably attached to or form parts of an indivisible building which likewise constitutes the residence and business house of the owner. (Mabry, J., dissenting.)

4. S., the head of a family consisting of a wife and eight minor children residing in this State, was the owner of a lot of land in an incorporated city containing less than one-half acre upon which was situated a two-story frame building, so constructed that there were five store rooms therein on the ground floor, one of which was used by the owner as his business house, while the other four were rented to tenants, and not used or occupied by the owner either for residence or business purposes. The second story consisted of bed rooms, all of which, except one which was vacant, were occupied by S. and family, and had been for two years previous thereto, as a residence, and for the entertainment of lodgers and boarders. The building was incapable of being physically divided without destroying it. G. & Sons., execution creditors of S., levied upon the lot of land claimed as exempt, and S. filed his bill to restrain the sale thereof, claiming it to be exempt as his homestead. G. & Sons filed their answer and cross-bill denying that all the property was used as a homestead, and praying in the cross-bill that the court set aside as a homestead so much of the property as was proper, and subject the residue to sale under the execution. The court entered a decree requiring S. to select so much of the premises as would secure to him a residence and business house, dividing the building by perpendicular lines so that his place of residence should be immediately over his place of business. S. having failed to select as required by the decree, the court dismissed his bill; and upon the cross-bill, by consent of G. & Sons, decreed that the south thirty-nine feet of the building, with all vacant portions of the lot, be set apart to S., as exempt, and that the residue of said building and the land upon which it was situated was subject to sale under the creditors' execution. S., appealed from the decree, claiming that the entire building and lot should have been set apart to him as exempt, but making no contention that the allotment to him was unfair or insufficient for residence and business purposes: *Held*, that the decree be affirmed. (Mabry, J., dissenting.)

Appeal from the Circuit Court for Hillsborough County.

*Statement.*

In this cause the appellant (complainant below) filed his bill on the 5th day of July, 1894, in the Circuit Court of Hillsborough county, against the appellees, alleging in substance that he was the head of a family

consisting of a wife and eight minor children residing in the State of Florida, all of his family residing with him and dependent upon him for support; that on the 28th of April, 1894, and long prior thereto, he was the owner in fee simple of lot ten of block twenty-eight of Ybor City, a subdivision of the city of Tampa, in the county of Hillsborough and State of Florida, said lot being less than one-half acre in extent; that on the date above named, and for several years prior thereto, he was using and occupying said lot and the building thereon as a home for himself and family; that under the constitution and laws of Florida the building and lot were exempt; that on the 26th of April, 1894, defendant below (appellee herein) sued out a writ of attachment against him for a thousand dollars and had such writ levied upon the above described property; that afterwards a judgment was obtained in said attachment suit, execution issued thereon and levied upon the above described property; that the matters and things for which said judgment was obtained were not such as under the constitution of the State of Florida are made a charge upon a homestead. The bill prayed for an injunction restraining the defendants from further proceedings to subject said property to the satisfaction of the judgment. After notice, and upon the appellant giving bond required by the court, a temporary writ of injunction was issued on the 9th of July, 1894. On the 11th of July the defendants filed an answer and cross-bill, admitting that the complainant was the head of a family and resided upon the property described; that the lot of land was less than a half acre, but denied that all the property was used as a homestead, and praying in the cross-bill that the court would set aside so much of the property as the court thought was proper, and

subject the rest to the payment of the judgment. On the 28th of July, 1894, the complainant demurred to the cross-bill on the ground that there was no equity in it, which demurrer was overruled by the court; and on the said 28th day of July, 1894, the complainant excepted to the answer filed by the defendants upon the ground that the same was insufficient, immaterial and constituted no defense to the bill of the complainant, which exceptions were on the 28th of July also overruled by the court. And thereupon the complainant filed an answer to the cross-bill and replication to the defendant's answer. Whereupon the cause was referred to a master in chancery to take the proof, and the following agreed state of facts were reported by the master: "That the name of complainant is Thomas B. Smith; that he is the head of a family residing in the State of Florida; that his place of residence was, on the day that the attachment was issued referred to in the bill, lying and being situate in the county of Hillsboro and State of Florida, and known as lot 10, of block 28 of Ybor City, State of Florida, County of Hillsborough; that there were residing with him at that time on the said premises his wife and eight children under the age of twenty-one years; that the building erected on said premises cost $2,650 when it was built; that the attached diagram represents the location and number of rooms in said building; that he together with his family occupies the rooms on said diagram marked 'T. B. S.;' that various tenants occupy the other rooms as shown by the diagram; that the said Smith, at the time of the levying of the attachment, owned no other property in the city of Tampa; that prior to said attachment he had resided in the city of Tampa for the space of two years, and at the time of the service of the

Smith v. Guckenheimer & Sons.—Statement of Case.

attachment had no other house or home and was *bona fide* living upon the premises above described, and continuously resided thereon up to this time; that the land upon which the building is erected is a lot 70x95 feet and less than half an acre; that the building is a frame building, and cannot be physically divided without destroying the building; that the said T. B. Smith does not keep a regular boarding or lodging house, but occasionally takes lodgers in certain of the upstairs rooms in said building, for the use of which he makes reasonable charges; that for the downstairs rooms occupied by tenant he receives rent."

The case came on to be heard on the pleading and agreed state of facts on the 20th day of May, 1895, and the court made the following decree: "That the complainant Thomas B. Smith has so constructed his buildings as to conflict with the provision of the constitution providing that no more improvements than a residence and a business house shall be exempt, in a city or town, by constructing a block of five stores, four of which are, as shown by the proof, rented to other persons: Wherefore it is further adjudged and decreed that the complainant, Thomas B. Smith, is the head of a family and entitled to a homestead, and that he be allowed to select so much of the said premises as will secure to him a residence and business house thereon, dividing the building by perpendicular lines so that he have his place of residence for his family immediately over his place of business. And twenty days are allowed for the complainant to make and file with this court the diagram of such selection. All further orders of this court await the expiration of said time."

"That this cause came on to be finally heard upon the pleadings, agreed state of facts and the former or-

Smith v. Guckenheimer & Sons.—Statement of Case.

ders of this court, and the court being advised that the complainant, Thomas B. Smith, declines to avail himself of the privilege accorded him by a former order of this court to select for himself so much of the lot in controversy and building thereon as may be lawfully set apart to him under the provisions of the constitution and laws of the State; and it appearing to the court from the agreed state of facts that all of the improvements upon said lot are not subject to exemption, and the said plaintiff not being willing ·to do equity by electing to take such part as might be lawfully set apart to him; it is, therefore, adjudged and decreed that the original bill be dismissed at complainant's cost and the injunction granted be dissolved.

And upon the consideration of the cross-bill of defendants, it appears to the court that the said T. B. Smith is the head of a family residing in the county of Hillsborough, State of Florida; that he is entitled to a homestead exemption, and that he is the owner of lot ten (10) in block twenty-eight (28) as laid down on the map of that portion of Tampa called 'Ybor City,' and having a front on Sixth street of seventy feet by a depth of ninety-five (95) feet on Fourteenth street; that there is on said lot a building with five (5) store rooms on the ground floor and bed rooms upon the second floor; that the said Smith occupies one of the store rooms, and, with his family and lodgers to whom he rents the same, occupies the whole of the rooms upstairs except one vacant room; that the other four stores are rented out and occupied by tenants and not used or occupied by said Smith except for the purpose of renting. It is therefore ordered, adjudged and decreed by the court, the attorney for S. Guckenheimer & Sons assenting thereto, that the South thirty-nine (39)

feet of said building, with all the vacant portion of said lot, be and the same is hereby set apart to the said Smith as a residence and business house.    It is further ordered, adjudged and decreed that the remaining three store rooms, being in excess of the exemption allowed by law, together with the land upon which they are situated, to-wit: beginning at a point in the west line of Fourteenth street, about thirty-nine (39) feet north from Sixth street, and at the partition wall dividing the third store from the second store room, and running thence west with said partition wall, thirty-five feet more or less, to the west line or wall of the building; thence running north with the line of the building about fifty-six feet, more or less, to the north line of said lot ten; thence east with the north line of said lot thirty-five feet, more or less, to the west line of Fourteenth street; thence south with the street line fifty-six feet, more or less, to the place of beginning, being the remainder of said lot of land except that part set aside to the said T. B. Smith, be, and the same are declared to be subject to the execution levied upon the whole lot, and may be sold by the sheriff under the provisions of the law governing execution sales.    It is further adjudged and decreed that T. K. Spencer, sheriff, is not a necessary party to the proceedings herein and the same are dismissed as to him, with his proper costs."

From which decree the complainant took an appeal, and assigns the following errors:

First. The overruling of the demurrer of appellant to the cross-bill.

Second. The overruling of the exceptions filed by the appellant to the answer of the appellee.

Third. The granting of the decree dated May 20th, 1895.

Fourth. The rendering of the final decree in said cause, dated June 15th, 1895.

The other facts in the case are stated in the opinion of the court.

*Carter & Graham* for Appellant.

*G. A. Hanson* for Appellees.

TAYLOR, C. J.:

Upon the question raised in the opinion filed by Mr. Justice CARTER, as to whether this court should decide the case upon the abstract of the record or upon the transcript, my view is that this court is bound under its rule 20 to decide the case upon the *abstract of the record* that has been prepared by the appellant's counsel, and agreed by the appellees' counsel to be a correct expose of the transcript of the record by his failure to file under said rule any exception questioning its correctness. I have no doubt of the authority of this court to prescribe such a rule, whose aim, to expedite the delayed business before the court, is most salutary. If this court has not the power to prescribe such a rule for the submission of causes before it, then it has no power to prescribe a rule for the submission of briefs and arguments in such causes, nor to impose the penalty of dismissal of a cause for failure to file briefs therein. Such abstract of the record makes out the following case: The appellees recovered judgment against the appellant in the Circuit Court of Hillsbor-

ough county, and levied the execution issued from such judgment upon lot ten, of block twenty-eight of Ybor City, a subdivision of the incorporated city of Tampa, in Hillsborough county, as the property of the judgment debtor. Thereupon the appellant filed his bill in the Circuit Court of Hillsborough county against the appellees alleging, in substance, that he was the head of a family residing in this State, consisting of his wife and eight minor children, and that he was the owner of the lot in fee above described, and that at the date of the rendition of such judgment, and for several years prior thereto, he was using and occupying said lot and the building thereon as a home for himself and family, and that under the constitution and laws of Florida, the building and lot were exempt; that the debt for which such judgment was obtained was not such a one as the constitution made a charge upon a homestead. The bill prayed for an injunction to restrain further proceedings to subject such property to the satisfaction of said judgment. Temporary injunction was granted. Defendant filed an answer and a cross-bill, admitting that the defendant was the head of a family and residing upon the property described, and that the same was less in area than a half acre, but denied that all the property was used as a homestead, and praying in the cross-bill that the court would set aside so much of the property as the court thought was proper, and subject the rest to the payment of the judgment. Exceptions to the answer and demurrer for want of equity to the cross-bill were filed, and both were overruled by the court. The defendant then answered the cross-bill, but what such answer was, or what the particular averments of the cross-bill were, or what were the grounds

of the exceptions to the defendants' answer to the original bill, the abstract does not show.

The cause was referred to a master and the following agreed state of facts were reported by the master: That the said Thomas B. Smith is the head of a family residing in the State of Florida; that his place of residence was, on the day that the attachment was issued referred to in the bill (an attachment in the suit having been levied on the property preceding the rendition of the judgment), lying and being situate in the county of Hillsborough and State of Florida, and known as lot 10 of block 28 of Ybor City; that there were residing with him at that time on the said premises his wife, and eight children under the age of twenty-one years; that the building erected on said premises cost $2,650 when it was built; that the attached diagram represents the location and number of rooms in said building (the abstract fails to exhibit this diagram); that he together with his family occupy the rooms on said diagram marked "T. B. S.;" that various tenants occupy the other rooms as shown by the diagram; that the said Smith, at the time of the levying of the attachment, owned no other property in the city of Tampa; that prior to said attachment he had resided in the city of Tampa for the space of two years, and at the time of the service of the attachment had no other house or home and was *bona fide* living upon the premises above described, and continuously resided thereon up to this time; that the land upon which the building is erected is a lot 70x95 feet and less than half an acre; that the building is a frame building; that the said T. B. Smith does not keep a regular boarding or lodging house, but occasionally takes lodgers in certain of the upstairs rooms in said building, for the use of which he

makes reasonable charges; that for the downstairs rooms occupied by tenant he receives rent.

The case was heard on the pleading and the agreed state of facts, and the court on May 20th, 1895, made the following order in substance: That while the complainant was entitled to a homestead in the property, the entire building and lot were not exempt, as the whole building was not used for homestead purposes, and allowed the complainant twenty days within which to select such part of the property as he desired for his residence and place of business, dividing perpendicularly. The twenty days having expired, and the defendant not having made such election, the court, on the 15th day of June, 1895, rendered a final decree ordering that the property be divided and that the south thirty-nine feet of the building with all vacant portions of said lot be set aside to the said Smith as a homestead, and the remainder of the building with the land upon which it is situated be declared subject to the execution levied upon it and be sold by the sheriff under the provisions of law governing execution sales.

From this last decree the appeal is taken and the following errors are assigned:

First. The overruling of the demurrer of appellant to the cross-bill.

Second. The overruling of the exceptions filed by the appellant to the answer of the appellee.

Third. The granting of the decree dated May 20th, 1895.

Fourth. The rendition of the final decree dated June 15th, 1895.

The first and second of these assignments will have to be treated as abandoned, since the appellant in preparing his abstract of the record has failed to give

the material substance of the defendants' cross-bill that was demurred to, and has failed also to give the material substance of the exceptions filed by him to the answer of the defendant, and has failed also to give the material substance of such answer, all of which, in the language of Rule 20 of this court, "have a necessary and material bearing on the questions presented by" these two assignments of error, and were vitally necessary to "a full, fair and clear presentation thereof" for adjudication. The third and fourth assignments of error involve a construction of the provisions of section 1 of Article X of our constitution, in so far as it affects the homestead exemption within the limits of incorporated cities and towns. This section reads as follows: "A homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars' worth of personal property, and the improvements on the real estate, shall be exempt from forced sale under process of any court, and the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists. But no property shall be exempt from sale for taxes or assessments, or for the payment of obligations contracted for the purchase of said property, or for the erection or repair of improvements on the real estate exempted, or for house, field or other labor performed on the same. The exemption herein provided for in a city or town shall not extend to more improvements or buildings than the residence and business house of the owner; and no judgment or decree or execution shall be a lien upon exempted property except as provided in this article."

It must be observed in the outset that this provis-

ion of our organic law differs materially from the homestead provisions of all the other States; and that, therefore, but little, if any, light for its proper construction can be derived from the diverse decisions of our sister States upon their varying provisions of law on the same subject. The case in hand calls for a solution of the intent, meaning and effect of the following *limitation* of the urban homestead: "The exemption herein provided for in a city or town shall not extend to more improvements or buildings than the residence and business house of the owner." This clause, it will be observed, follows after the provisions for the exemption of a homestead in a city or town, and what is it that is thus previously exempted in a city or town? "The half of one acre." Of what? *Land*, of course, since nothing but land is designated, in our tongue, by the word *acre*. The *"exemption,"* then, that is limited and curtailed by the presence thereon of *other improvements or buildings* than the residence and business house of the owner necessarily means the *land* within the prior prescribed area that is dedicated to the support of such other improvements or buildings than the residence and business house of the owner. In other words, if such urban resident confines his improvements and buildings to his own residence and business house, then, no matter what may be the design, size or value of such buildings, they, together with the half acre of ground upon which they stand, are exempt to him from his debts; but when he puts other buildings or improvements upon the half acre than his residence and business house, he thereby dedicates those portions of the exempted *half acre* devoted to the *support* and *uses* of such *other improvements or buildings*, to other uses than those of the legally tolerated residence and

business purposes of himself, and thereby abandons such portions of the half acre, and by such abandonment forfeits his right to exempt them from his debts. This provision of the constitution does not undertake to dictate or prescribe the design, size or value of the residence or business house that it includes in the exemption. How, then, is the exempted *residence* and *business house* to be recognized and distinguished? Only by their *actual use as such* by the party asserting the exemption thereof. On the other hand, how are the *other non-exempt* improvements and buildings to be recognized and distinguished when present? Likewise, by the uses to which they are actually and permanently devoted; aided, perhaps, by their architectural design, and, in some cases, by their bare presence without being used at all for any purpose. *Illustratio*: The exemptor, besides the house that he actually resides in, erects upon his half acre lot another separate house designed for residence purposes, that with its necessary outbuilding appurtenances, well, etc., is partitioned off by fencing to itself, but is not used for any purpose by the owner, nor does he rent the same, simply lets it stand there unoccupied and unused. Such extra house and the land it occupies with its appurtenant outbuildings, well and ground separately enclosed with it, would not be exempt, but would be treated as abandoned. On the other hand, the exemptor, besides his residence house, has a business house that he uses in conducting his own profession, business or employment; besides this, he erects on his half acre lot still another separate building designed for a business house, separates it by an enclosure from the rest of his lot, but does not use it himself, nor does he let others use it; simply lets it stand there unoccupied and unused, such extra business

house with the land upon which it rests, together with the land separately enclosed around it, would not be exempt, but should be treated as abandoned. The quoted limitation of our constitution, then, in short, confines the improvements and buildings upon the urban homestead to such only as constitute the *actual residence* and *business house of the owner,* and withholds the quality of exemption from debts from all other improvements or buildings with those portions of the limited half acre devoted separately to them as do not constitute such *residence* and *business house.* The case under consideration presents the complication of a single indivisible building that combines within itself the residence and business house of the owner, besides other rooms on the ground floor permanently leased to tenants. These rooms thus permanently leased to tenants, did they constitute a separate building to itself on another part of the owner's half acre away from his residence, would, undoubtedly, together with *the land* that they occupied or that was separately devoted to them, not be exempt. Does the fact that they are made part of the indivisible *building* that constitutes the residence of the owner *include* them within the *exemption* that attaches to the *residence* and business house, when the constitution expressly *excludes* them from the *exemption* as being "more *improvements than the residence and business house* of the owner?" The answer must be in the negative; otherwise the skill of the architect can be utilized to annul or successfully evade the plain provision of the organic law, and the exemptor by its use, with a single building under one roof, with its many stories piled skyward, could not only fulfill the purpose of this law in supplying himself and family with a residence and business house, but, besides, could supply a

score of other families with residences and business houses, to the great pecuniary advantage of himself, but to the great wrong and injury of his creditors. To prevent such a condition of affairs was the evident purpose of the quoted limitation of the constitution upon the urban homestead when it declares, in effect, that the exemption provided for in cities and towns *shall not include improvements and buildings that are not the residence and business house of the owner*, and it can make no difference in principle whether the *excluded* improvement be a separate building occupying a different piece of the half acre of ground, or whether it is built into and forms part of the house in which the owner resides. The difficulty presented in the latter class of cases, where the *excluded* improvement forms part of the building that comprises the residence of the exemptor, is to arrive at the correct rule for severing the exempted part of the building from that which is not exempt, particularly where such building is incapable of division without destruction. We have seen that where the non-exempt improvement or building occupies a separate part of the half acre, that the *ground* upon which it rests and that is separately devoted to its use loses its feature of exemption and becomes subject to debts. Why should not the same result follow the inhibited improvement when mixed in with the building that comprises the residence and business house? It may be answered that the application of the same rule in the case of a mixed building might deprive the owner in some cases of his entire homestead, when in point of fact he actually occupies and uses the *same ground* with the residence part of his building that is likewise occupied by those parts thereof that are not in any sense his residence or business place. The reply to

this is that a man cannot by any act of his impart the legal quality of immunity from debts to property that the law says shall not be exempt when certain conditions exist. The constitution says, in effect, that the improvements and buildings on the urban half acre together with the ground that they occupy, that are not the residence and business house of the owner, shall not be exempt. Can the owner by adding an additional story to such non-exempt improvement or building, and utilizing it as his residence, impart to it and the ground it occupies the quality of exemption? Most assuredly not.

In order to be exempt, the property must have all the qualities necessary under the constitution to exemption, but it must have nothing more. It must not exceed the half of one acre in the incorporated town, it must be resided upon by the owner, and in addition to his residence he can have for himself a business house thereon. These are the qualities that necessarily stamp it as exempt, but it must not have upon it other improvements or buildings than such residence and business house with their appropriate appurtenances; if so, the part or parts thereof devoted to such other uses and purposes than those of the residing place and business place of the owner lose their quality of exemption. When a man undertakes to assert the status of exemptor towards a given house, the *legal use* of such house that will *support* such status is that of residence for himself; permanent occupancy by others for purposes of revenue to himself is not a legal use that can be invoked to maintain the status of exemptor. And if such house is devoted to both the legal and the illegal use, the latter will nullify the former and the exemption must fail. And, in order to preserve unim-

paired the principles and rights that govern the owner-
ship of real estate, the forfeiture of the right of exemp-
tion that follows upon the presence on the urban half
acre of other improvements or buildings than the resi-
dence and business house must be visited upon and reg-
ulated by the *soil covered* or *occupied* by such inhibited
improvements or buildings or separately devoted to
their use. The result of the discussion is, in short, that
in cases of separate or detached buildings upon the
urban half acre, that are not the residence or business
house of the owner, nor necessary outbuildings used in
connection therewith, such separate or detached build-
ings, together with the ground that they occupy and
the ground around them separately devoted to their
use, are not exempt. In those cases where the *non-
exempt improvement* or building is combined in a single
structure that likewise constitutes the residence or busi-
ness house of the owner, *the soil perpendicularly under
and covered by any such non-exempt improvement* is im-
properly dedicated to other uses than are consistent
with the constitutional right of exemption thereof, and
is, therefore, *not* exempt, and this whether such non-
exempt improvement be situated upon the first, second,
third, fourth or tenth floor of a many storied building,
and notwithstanding the fact that the space perpendic-
ularly above or below such non-exempt improvement
may be properly utilized by the owner for legitimate
residence or business purposes; and the loss by such
*soil* of the quality of exemption carries with it, under
the maxim, *cujus est solum ejus est usque ad coelum*, the
loss of the quality of exemption to everything perpen-
dicularly *above* such soil. It may be that in the appli-
cation of this rule the whole of the residence or business
house exemption may be taken away and defeated, but,

in such case, the blame must fall upon the exemptor who thus devotes the same soil to the two *inconsistent uses*, the one legally sufficient to support the exemption contended for, the other legally sufficient to defeat or destroy it.

Under this construction, according to my view, the court below erred in its order extending to the appellant the right to select the part of the building that he desired to fix upon as his residence and business place, since by doing so he may have by his own act of selection imparted the quality of exemption to some portion of the *soil* that had lost such quality by the presence on it or over it of non-exempt improvements, but, as the appellant failed to avail himself of the right of selection thus extended, this error is cured by the subsequent final decree that singles out the land or soil covered by the south thirty-nine feet of the building together with all the vacant portions of said lot and adjudges it to be exempt as the homestead of the appellant, and adjudges the residue of the lot to be subject to sale.

This disposition of the property made by the final decree takes in a part only of the soil that has been devoted to other uses than those recognized by the constitution in conformity with the views above expressed; its only vice is that it does not condemn *all of the ground* covered by the inhibited improvements, but as the judgment creditor expressly agreed to the propriety of the decree in the matter of the extent to which it went, there is no one who has any right to complain of the fact that it has not gone as far as it could with propriety have gone, and my view, therefore, is that the decree of the court below should be affirmed.

The decree of the court below is hereby affirmed.

CARTER, J.:

The court decides this case upon the facts set forth in the statement prepared by Mr. Justice MABRY in connection with his opinion. That statement is sub-stantially a copy of appellant's abstract of record, adding thereto two of the decrees in full rendered by the court below. The abstract does not truly present the pleadings, issues and facts of the case as represented by the transcript of the record, and in deciding the case upon the abstract we are not passing upon the precise case presented to and decided by the lower court, as I shall presently show. Under the laws of this State prior to September, 1895, it was uniformly held that this court "must not be expected to decide moot questions such as may be presented upon stipulations of counsel, for such course is liable to result in great abuse of public justice and may be unjust and prejudicial to a Circuit Judge, if it should happen that the counsel have presented a case and obtained a reversal or affirmance of supposed rulings which would surprise the judge when brought to his notice." City of Jacksonville v. Lawson, 16 Fla. 321. And in many cases where the parties voluntarily agreed upon the evidence used in the court below, this court refused to consider it because it was not authenticated by the signature of the judge. Robinson v. Matthews, 16 Fla. 319; Richardson v. State, 28 Fla. 349, 9 South. Rep. 704; Pickett v. Bryan, 34 Fla. 38, 15 South. Rep. 681; Florida Central and Peninsular R. R. Co. v. St. Clair-Abrams, 35 Fla. 514, 17 South. Rep. 639. In the present case there is not even an agreement of the parties that the abstract

upon which it is decided correctly states the case as
shown by the transcript of the record. The abstract
may constitute an agreement on the part of appellant
that such is the fact, but it does not so operate as to
appellees. The facts are that appellant filed the ab-
stract, and appellees failed to except to its correctness.
If the rule is valid appellees may be estopped from de-
nying its correctness by their failure to except, but I
do not think they can be said to have agreed to its cor-
rectness. It would seem from the decision now made
that the court must henceforth disregard the unan-
swerable argument quoted above, and that the very
thing that the parties could not formerly do voluntarily
the court must now compel them to do, even though
the consequences may "result in great abuse of public
justice," and may "surprise" the Circuit Judge when
brought to his notice. The decision is based upon the
provisions of Rule 20, adopted by this court September
16, 1895, and if that portion of the rule applied in this
case has been properly construed, and is valid, then I
admit that the decision is correct. The rule referred
to requires that in every writ of error or appeal in civil
causes brought to this court, the attorney for plaintiff
in error or appellant shall prepare a concise abstract or
statement of the transcript in the manner therein desig-
nated showing the pleadings, the rulings of the court,
the issues and the facts on which the issues were deter-
mined, four copies of which must be filed in this court
and one copy served upon defendant in error or ap-
pellee or his attorney on or before the day to which the
cause is returnable. It provides "that the cause may
be tried upon such abstract or statement without ref-
erence to the transcript unless" the defendant in error
or appellee shall question the correctness thereof,

which he is authorized to do by filing a statement of his exceptions to its correctness in the manner therein pointed out, in which event the court will determine as between the opposing statements by reference to the transcript. It then provides that "the cause may be dismissed on motion of defendant in error or appellee" for the failure of plaintiff in error or appellant to comply with its requirements, and reserves to the court power to allow further time to comply with its provisions upon such terms as it may deem just. It contains a clause to the effect that its provisions shall apply to all civil causes made returnable to the January term, 1896, and that "the court may of its own motion dismiss the cause for failure to comply with the requirements of this rule." 35 Fla., p. 9, Rule 20. If the word "may" as used in the clauses relating to the trial of the cause upon the abstract, and to dismissal for failure to file abstracts, is mandatory and the clauses are valid, then we must enforce them because a valid rule is binding upon the court and the parties (Merchants' Nat. Bank of Jacksonville v. Grunthal, 39 Fla. 388, 22 South. Rep. 685); and it seems that the parties will not even be permitted to waive the requirements of the rule by consenting that abstracts be not filed. Anderson Pressed-Brick Co. v. Dubois, 10 Utah 60, 37 Pac. Rep. 90; Long v. Long, 96 Mo. 180, 8 S. W. Rep. 766; Spain v. Thomas, 49 Ill. App. 249; Spencer v. McMaster, 3 Wyo. 105, 3 Pac. Rep. 798. According to my construction, the language used is permissive, not imperative, and under the circumstances I do not think we should dispose of this case upon an abstract which does not truly present the case as shown by the transcript of the record. In justice to the Circuit Judge, whose official action we are review-

ing, and who has had no opportunity to inform us that we are asked to reverse a judgment rendered by him under his oath of office upon an abstract presenting only a *part* of the pleadings and a *part* of the evidence upon which his judgment was based, it would seem more appropriate to dismiss the cause for failure to present such an abstract as the rule in letter and spirit requires, even though the opposite party has neglected to file exceptions to the abstract. I would not be understood as reflecting in the slightest degree upon the able counsel who prepared the abstract. I feel quite sure that he prepared it in good faith and that he inserted everything that in his opinion was material as shown by the transcript, but it is a fact that parts of the pleadings and parts of the evidence shown by the transcript are omitted, as I shall show further on. The abstracts are intended for our benefit and convenience, to aid us in disposing of the *identical* case before the court below, and were never intended to enable or permit the parties to agree upon or present a *different* case for our review in this court. They are designed as mediums for presentation in the smallest possible compass of those portions of the transcript material and necessary to be understood by us in order to determine the questions involved, and to eliminate from our consideration all superfluous or unnecessary matter, of which more or less is always found in the transcript. Four copies are required to be filed in order that each member of the court when considering the case may have before him in convenient form the substance of all material portions of the transcript, and that each may consider the case at the same time, which it is impracticable to do without the abstracts, as only one copy of the transcript is required to be filed. In this case the

transcript contains only thirty typewritten pages, and the court can readily dispose of the case upon its merits upon this short transcript without inconvenience and practically as easily as if correct abstracts had been filed.   But if my construction of the rule is incorrect, then I hold that this court had no power to bind itself to dispose of the case upon an incorrect abstract, or to attach as a penalty for violation of the rule, the dismissal of a cause without consideration of the merits. I know the court has in  a few  instances  dismissed cases for failure to file abstracts under this rule, but it has never yet, so far as I know, undertaken to reverse a judgment upon an abstract that failed to present the case as it appeared in the record; in fact, this is one of the first cases reached in regular order upon the docket to which the abstract rule applies.   But notwithstanding the fact that the validity of that rule is not questioned in this case, and that the court has to some extent been enforcing it in the past, I feel impelled by a sense of duty to dissent from the express ruling now made that certain provisions of Rule 20 are valid, and as we shall from henceforth be compelled to dismiss or affirm many cases where no or insufficient abstracts are filed, and to decide cases from the abstract, though the case there made be different from that shown by the record, I shall proceed to state my reasons for denying validity to the clauses which I have placed in quotation marks above.

I shall preface what I have to say by stating that under our written constitutions, and republican forms of government, the powers are vested in three co-ordinate, but separate and independent departments: the legislative, executive and judicial.   The latter power is vested in the courts, and it is of the highest importance

Smith v. Guckenheimer & Sons.—Opinion of Court.

that the courts should be ever careful not to intrench upon the jurisdiction of the other departments, or usurp authority properly belonging to one of them. It must be ever borne in mind that the powers of courts are judicial; they have no right to make, unmake or change laws; their authority is to construe the laws and decide what is or has been the law, not what it ought to be or shall be in the future. If they go beyond this, and even by a decision deliberately made in a cause properly before them, undertake to change or make law, while their decisions may be binding, they are none the less usurpers of legislative jurisdiction and have passed beyond the bounds of their own constitutional authority. By the common law, courts possessed power to make and enforce rules of practice; but it is not easy to state with precision the exact extent of those powers. As the parliament—the legislative department—was in England supreme, I think it will not be denied that a rule of court contravening an act of parliament or attaching other conditions to the enforcement of a right provided for by statute would at common law be void, and it will also be readily admitted that parliament might, if it saw fit, confer legislative powers upon the courts and authorize them by rule to change or make rules of law. In this country where the judicial and legislative departments are distinct and forbidden by the constitution from encroaching the one upon the other's jurisdiction, there is a line separating the common law power of the courts to make rules of practice from the legislative power of the State which has been granted solely to the legislature. There can be no doubt that the regulation of the practice and procedure in courts of justice properly appertains to the legislative power, and that the courts cannot defeat the will

of the legislature by disregarding rules legally pre-
scribed by it and substituting their own therefor.  It
is true that constitutional courts have inherent power
or implied authority to adopt necessary rules to enable
them to exercise their jurisdiction, but these powers
can only be exercised in cases where the common law
or legislative enactments fail to provide a necessary
method of procedure, or where the legislative enact-
ments substantially impair the constitutional powers of
the courts or practically defeat their exercise.  State
*ex rel.* Ross v. Call, Judge, 39 Fla. 504, 22 South. Rep.
748.  So far as I have been able to find, it is uniformly
conceded in this country that no court has power to
pass any rule in conflict with a statute or the common
law, unless the legislature or the constitution has given
them that power, or the law with which the rule con-
flicts substantially impairs the constitutional powers of
the court, or practically defeats their exercise.  State
*ex rel.* Plummer v. Gideon, 119 Mo. 94, 24 S. W. Rep.
748; DeLorme v. Pease, 19 Ga. 220; State *ex rel.* v.
Withrow, 133 Mo. 500, 36 S. W. Rep. 43; Rozier v.
Williams, 92 Ill. 187; Fisher v. National Bank of Com-
merce, 73 Ill. 34; Hinchly v. Machine, 15 N. J. L. (3
Green) 476; Suckley's Admr. v. Rotchford, 12 Gratt
(Va.) 60, S. C. 65 Am. Dec. 240; State v. Posey, 17 La.
Ann. 252, S. C. 87 Am. Dec. 525; Doe *ex dem.* Patter-
son v. Winn, 5 Peters, 233; Ward v. Chamberlain, 2
Black, 430; Saylor v. Taylor, 77 Fed. Rep. 476; Paw-
ley v. McGimpsey, 15 Tenn. (7 Yerg.) 502.  But we
have in this State an express legislative declaration and
limitation of our power to make rules in section 1308
Revised Statutes reading as follows:

    "The Supreme Court shall have the following
powers, and action taken by it thereunder shall have the

force of law until otherwise provided by the legislature, to-wit:

1. To make, amend, annul or modify rules of practice or pleading of the Supreme or any other court as it may see fit, not inconsistent with law.

2. To make rules for the issuing and return of process in all courts, not inconsistent with law.

3. To regulate the manner in which judgments may be entered in all courts, such regulations to be not inconsistent with law.

4. To make and prescribe such new or altered forms of practice, pleadings and proceedings for all the courts of the State as it may think necessary."

It will be observed that as to each power mentioned in this statute the court is limited to such action as may *not be inconsistent with law*, except the fourth, and that relates only to prescribing forms, and gives no power whatever to require abstracts as we have done by Rule 20. These powers are much more limited in their scope than those given by the statute referred to in Robinson v. Roberts, 16 Fla. 156, and the rule there upheld appears to have been a valid one at common law. That case is, therefore, no authority for sustaining the rule in the present case. The statute quoted is essentially a limitation upon the powers of the court in regard to making rules. The court has an inherent power of this nature, limited as I have stated, which cannot be divested by the legislature, and it is also authorized by the common law to make rules. It would be superfluous for the legislature to *grant* them the identical power they already possessed. By the legislation quoted the legislature has merely declared and confirmed the power already possesed, and perhaps extended it so far as other courts are concerned, but with limita-

tions which are unmistakably and clearly expressed, *viz*: that the rules framed shall *not be inconsistent with law*. All rules adopted prior to the enactment of the Revised Statutes were made under the authority of legislation much broader in its scope, and I do not intimate that they are not valid. Nor do I now say that we have no power to enact a rule requiring abstracts of the record as we have done by Rule 20 referred to, but I do deny the power to prescribe the penalty of dismissal for its violation, or to bind ourselves by the rule to try and decide a case upon the abstract without reference to the transcript, because these provisions of the rule are inconsistent with the law, as I now propose to demonstrate. Section 1270 Revised Statutes authorizes writs of error to issue on demand as matter of right under regulations therein specified, and subsequent sections provide limitations upon the time of suing them out and for supersedeas. Appeals in chancery are also matters of right. Section 1455. Section 1275 makes it the duty of the plaintiff in error to demand from the clerk of the court below, or from the judge if it has no clerk, a true copy of all proceedings in the cause in the court below and to file said copy in the appellate court on or before the return day of the writ of error, and requires the latter court under specific regulations to dismiss the writ of error upon failure to file the proceedings as required. Section 1276 requires the plaintiff in error to file in the appellate court his assignment of errors within three days after filing the copy of record, and provides for dismissal of the cause for failure to do so. Section 1277 provides that "it shall be the duty of the court on appeal or writ of error to examine the record, to reverse or affirm the judgment, sentence or decree of the court below, or to

give such judgment, sentence or decree as the court below ought to have given, or as to it may appear according to law." Under section 1462 "the provisions of law relating to writs of error, governing the filing of transcripts of record and proceedings thereon, and filing assignments of errors, the duty of the appellate court in examining the record and giving judgment, in causing execution of its decrees, and in quashing writs of error, shall be applicable to appeals in chancery." The appellate practice prescribed by the statutes is a simple one, encumbered with few restrictions, and it cannot be pretended that it in any way impairs or tends to defeat the exercise of the constitutional jurisdiction of this court.

We are required to *examine the record* in every case properly brought under the statutes, and no authority is anywhere given us to disregard this requirement by adopting a general rule which requires or authorizes us to dismiss a case properly here under the statute for failure to file an abstract of the record not required by any statute or rule of the common law, and to decide the case upon the abstract without regard to and without examination of the transcript of the record. Writs of error and appeals in chancery are so highly favored that they are made matters of right; ample proceedings are provided for getting the cases properly to this court, and where they come to us in compliance with the statutes we are disregarding their plain requirements, intent and meaning when we add other conditions and restrictions unknown to the statute or common law, or refuse to hear the case, not because the statute is violated, but because our additional restrictions are not complied with. It will be observed that the statute authorizing us to make rules does not

empower us to inflict the penalty of dismissal, which is equivalent to denying a hearing, for a violation of the rules so made. Neither does it authorize us to decide a case upon an agreed statement of facts differing from those certified to us in the transcript of the record, which we are required to examine in passing upon the propriety of the judgment under review. While I do not deny that the power to make rules carries with it the power to enforce them in some appropriate manner, yet the power to enforce must itself be subject to limitations, otherwise a man might for violation of a mere rule of practice be subject to imprisonment or even the death penalty. The constitution gives to every man a right to be heard in this court in a proper case; the statute makes it a matter of right, has prescribed the procedure for securing that right, has made it our duty to act upon the prescribed procedure and to examine the record, and we have no authority to disregard these statutory enactments or inflict the extreme penalty of denial of a hearing for failure to comply with additional restrictions upon that right created by mere rules of court. The Supreme Court of Louisiana had before them a very similar question in the case of State *ex rel.* Levy v. Judges, 37 La. Ann. 395, and it was there held that the right of appeal is a legal and constitutional right, and the judges of the appellate courts have no power to defeat or destroy such a right for failure to comply with conditions imposed by their own rules, but not sanctioned by any provision of law; that the power of courts to make appropriate rules for the transaction of business before them, to require compliance with such rules and to enforce it by appropriate orders and penalties is not questioned; but that dismissal of appeal is not a proper or lawful pen-

alty and is one beyond judicial authority to inflict. The reasoning of that case appears to me conclusive of the question here discussed. Among other things, the court say: "The simple and radical question present-ed for our determination is, whether any court pos-sesses the power to defeat or destroy the legal and con-stitutional right of appeal for any cause not founded on *law*. The constitution and laws grant the right of appeal. They prescribe the conditions on compliance with which it may be exercised and enjoyed. Whence it derived an authority in courts to add to these con-ditions and to destroy a right of appeal founded on compliance with every condition prescribed by law for non-compliance with a mere rule of court, which, how-ever competent and proper for the convenience of judges and for the efficacious administration of justice, has not been prescribed by the law-making power as essential to the taking or maintenance of an appeal? The question is a grave one. If courts may add such conditions at all and enforce them by the penalty of dismissal, it would be difficult to impose limitations upon such a power, and a right guaranteed by legisla-tive authority would have no protection against arbi-trary judicial discretion. * * * Now the law may be searched in vain for any provision of law embodying the requirements of Rule V of the Court of Appeals. It is a pure judicial regulation, and however appropri-ate and essential it may be for the proper exercise of the jurisdiction of those tribunals, and whatever au-thority they may have to enforce it by appropriate or-ders and penalties, we are constrained to conclude that they, like ourselves, are without authority to punish its non-observance by dismissal of the appeal." See also, State *ex rel.* Tebault v. Judges, 37 La. Ann. 596; Gorm-

ley v. McGlynn, 84 N. Y. 284; People v. McClellan, 31 Cal. 101; Cates v. Mack, 6 Colo. 401; Hickernell v. First National Bank of Carlisle, 62 Pa. St. 146; Voight Brewery Co. v. Wayne Circuit Judge, 108 Mich. 356, 66 N. W. Rep. 217.

So long as the court judicially holds the rule to be valid, I must submit to its enforcement, but I cannot believe otherwise than that in adopting the quoted provisions the court has passed beyond the bounds of its rightful authority by disregarding valid statutes duly passed by the legislative department, and enforcing a mere rule of court that is at war with the letter and spirit of the legislation regulating appellate practice and procedure in this State.

In order to show that the abstract does not fully present the case decided by the Circuit Judge, I shall proceed to state facts certified to us in the transcript which either do not appear at all or are very imperfectly stated in the abstract. The bill alleged that the sheriff had advertised the lot to be sold under appellees' execution on August 6, 1894, and a copy of the advertisement was made an exhibit. The appellees in their answer alleged that there was situated on the lot a very large building having five store houses below; that the second story was divided into many rooms that had been constantly used as a boarding or lodging house, while the stores below, or a part of them, were rented to tenants who occupied same for business purposes. The alleged cross-bill is a part of the answer, though denominated therein a cross-bill, and it alleged that said stores were of considerable value for rental or business purposes, and that they were so constructed that they might easily and readily be partitioned so as to set off to appellant a homestead and business house and leave the

other portion to be sold or subjected to the payment of appellees' debt.   It prayed that appellant be permitted to select from "said block of buildings" such portion as is proper to be set apart to him as a residence and business house, and in case he should refuse to select, that the court refer the cause to a master to take proof; that upon the hearing the court decree the equities of the parties and settle their rights according to the constitution and laws, and if necessary that commissioners or freeholders be appointed as provided by statute for reviewing and setting apart so much of the buildings and grounds as were proper to be set apart to appellant for his homestead and business, and that such part of the building as might be found subject to execution be decreed to be sold and the proceeds applied to appellees' claim.

The appellant's answer to the cross-bill denied that the building situated upon the premises was capable of partition; alleged that the building could not be apportioned between the parties; that any division of the same would render the building useless to appellant; that there were ten rooms in the second story, of which nine were occupied by appellant and his family; that said rooms were necessary for the comforts and convenience of the family; and that of the rooms on the first floor one was occupied by a minor son of appellant.

From the order referring the cause to a master it appears that replications were filed to the answers to the original and cross-bill.   The master reported two agreed statements of facts, only one of which is referred to in the abstract.   The other is as follows:   "It is agreed that the building situated on the land claimed as exempt is of the following dimensions: Ninety-five feet on Fourteenth street and fifty feet on Sixth avenue, the

3

corner store being fifty feet deep, and balance of build-
ing thirty-five feet. The lower story is divided by
wooden partitions—no doors connecting—into five
store rooms; the steps leading upstairs are forty feet
from the corner of Sixth avenue; there are ten rooms
upstairs; a hallway through the building parallel with
Fourteenth street, stairs leading to hallway. E. E.
Cone occupies two of the store rooms, three and four
from Sixth avenue; C. A. Foster occupies fifth store;
first store by Camilias & Co.; T. B. Smith has a res-
taurant in number two. The upstairs occupied by T. B.
Smith and family and lodgers which he takes. The
diagram referred to in the abstract is as follows:

Representation of Lower Story.

From this statement of additional facts shown by
the pleadings and evidence in the transcript, not incor-
porated in the abstract, it will readily appear that we are
not passing upon the propriety of the decrees rendered
by the Circuit Judge under the same pleadings and facts
as they appeared to him when the decrees were ren-

dered.    From the standpoint of the abstract, it is very
doubtful if we ought to decide the question argued by
the parties.    The abstract affirmatively shows that a
portion of the evidence, *viz*: a diagram of the building
representing the location and number of rooms therein,
and those occupied by appellant and family, and those
occupied by tenants, is omitted, though it must be con-
fessed that if the diagram incorporated into the tran-
script had been included in the abstract, it would fall
far short of showing all the facts which the statements
of the abstract would lead us to infer it did show.    Pick
ett v. Bryan, 34 Fla. 38, 15 South. Rep. 681.    The only
issue before the court upon the answer and cross-bill of
appellees arises upon the allegation in the abstract that
the answer and cross-bill *"denied that all the property was
used as a homestead."*    The legal sufficincy of this alle-
gation was established by the decree overruling demur-
rer to the cross-bill and exceptions to the answer, and
the issue of fact, to-wit: whether *all* the property was
*used* as a homestead, is by the agreed statement of facts
incorporated into the abstract, clearly established in
favor of the appellees.    Although the question of the
divisibility of the building claimed to be exempt does
not appear from the abstract to have been a matter at
issues between the parties, the decision of this court is
made to turn upon that fact.    Taking the abstract as a
full and complete statement of the facts of the case, it
appears from the decrees that the court went outside of
the record and found certain facts to exist not in proof,
or that the diagram referred to in the abstract was of
much more extensive signification than the description
of it in the abstract would indicate.    The bill, according
to the abstract, did not allege that any attempt to sell
the premises was being made, but only that it had been

levied upon. Section 2006 Revised Statutes grants equity jurisdiction to *enjoin the sale* of all property that is exempt, but the result of this decision sanctions an injunction against further proceedings after a mere levy of something which cannot even be a lien on exempt property and no effort to sell under it is made. The last decree made by the court dismissed the original bill and the allotment of the homestead thereby was made upon the cross-bill. Although the allegations of the cross-bill and of the answers to the original and cross-bill upon which issues were framed by filing replications are not stated other than that the cross-bill and answer to the original bill "denied that all the property was used as a homestead," we are asked to decide a question of law upon the proof submitted without a showing that such proof was applicable to the issues involved. Tate v. Pensacola, Gulf, Land and Development Company, 37 Fla. 439, 20 South. Rep. 542. I shall not pursue this subject further, as the court holds that the abstract is sufficient to call for a decision upon the facts stated therein, but will proceed to state my view of the law applicable to these facts.

In the opinion prepared by Mr. Justice MABRY many decisions from other States are referred to. As the language of our constitution upon the subject of homesteads differs from the statutes or constitutional provisions considered in any of the cases cited by him, it is not safe to follow them implicitly. It is quite sure that the broad language used in McDougall v. Meginniss, 21 Fla. 362, does not recognize limitations as to rural homesteads which the most of the courts of other States, particularly Wisconsin and Kansas, have found to exist in the provisions of their homestead laws, as to separate buildings or improvements, on the real es-

tate attempted to be exempted. It is equally clear to my mind that there are limitations expressly declared in our constitution as to urban homesteads which do not exist as to rural ones. Those limitations are contained in the clause: "The exemption herein provided for in a city or town shall not extend to more improvements or buildings than the residence and business house of the owner." What is meant by the word "exemption" as here used? It means the "homestead to the extent of the half of one acre * * * and the improvements on the real estate," provided for in the preceding clause, and neither the excessive improvements nor the land upon which they are situated are in my opinion exempt under this article of the constitution. The intention is plain that the *exemption* is not to extend to more *improvements* or *buildings* than the *residence* and *business house* of the owner. I do not find in the language of the article any limitations upon the cost or size, or any specifications for the construction of the "residence" and "business house" to which the exemption extends, nor do I find anything therein which requires the residence to be at all times occupied exclusively by the owner, or which forbids him from taking boarders if he chooses, nor is there anything which forbids the owner from occupying a residence larger than may be necessary to accommodate his family. But when the improvements or buildings upon the land do exceed the residence and business house of the owner, then as to such excess the exemption does not extend, and it seems to me a plain proposition that when such excessive improvements are situated upon a part of the lot, but separate and distinct from the residence and business house, or if connected with the residence and business house, but capable of division therefrom without material injury to the ex-

empt buildings, the courts are not justified in holding such excessive improvements and the land upon which they are situated exempt from the claims of creditors, for the constitution expressly declares that they shall not be protected from sale as a homestead or part thereof. And if excessive separate improvements are not part of the homestead, what rule can we apply to make excessive improvements a part of the homestead if physically attached to the residence or business house? Is the skill of an architect or the mere shape and form of the improvements to defeat the plain meaning and intent of the constitution? If the owner should erect upon an acre lot a hotel or block of stores under one roof and indivisible without destroying the building, covering more than one-half acre, would the court be justified in allowing a homestead of the entire building and land covered by it because the owner with his family occupied the building as a home and for his business purposes? I answer no, because the homestead would in that case exceed the area prescribed in the constitution. In such a case we would either have to do as some other courts have done, deny the exemption entirely because the property cannot be made to conform to the homestead contemplated by the constitution (Miller v. Marx, 55 Ala. 322; Beecher v. Baldy, 7 Mich. 488), or permit the creditor to subject the excess over one-half acre with the portion of the building thereon to his execution. The creditor has a legal right to sell any property of his debtor not exempt from execution. The constitution declares that the exemption shall not apply to excessive improvements. This is a constitutional command, as forceful and mandatory as the other command to exempt the homestead. It makes no exception as to indivisible buildings, and I do

not see how the courts are authorized to do so.   In the present  case  the appellant, according  to  the .agreed statement of facts in the abstract, certainly has his *bona fide* residence  and  perhaps  his  business  house  in  the building situated upon his lot of land.   These are by the constitution declared to be exempt, and the court below so found, thereby negativing the idea that appellant had abandoned  either  his  residence  or  his  business  house. To the extent that the decree enjoined the sale of the residence and business house, it is clearly correct and neither party questions that part of the decree in this court.   But the court found, and I think was justified in finding  from  the  agreed  statement  of  facts  in  the  abstract, that appellant had upon the premises sought to be exempted, excessive improvements, constituting a part of the building occupied by him as a residence and business house.   The  case  presented  to  the  Circuit Judge may therefore be stated as follows:   Appellant, the head of a family, owns less than one-half acre of land in an incorporated city upon which are situated improvements consisting of a single building not capable of being physically divided without destroying it; his residence and business house being parts of this building and exempt from sale, all other parts being excessive improvements not exempt from levy and sale.   To give a creditor in such a case the right to sell the entire property would deprive the debtor of his homestead and enable  the  creditor  to  sell  property  forbidden  by  the constitution.   To give the debtor the entire property would exempt to him property expressly forbidden by the constitution and deprive the creditor of a right given him by law, without constitutional or statutory warrant. The fact that a building is incapable of division does not necesarily prevent the sale under execution of a partic-

ular part of the land covered thereby with the part of
the building situated thereon, for it is wholly unneces-
sary to "physically divide" the building to do that, but
the anomalous relations of the co-owners of the build-
ing after such sale and the mutual rights and duties of
each, and the specific method of determining just what
portion of the land and building ought to be set aside
to the debtor as patr of his homestead, would seem to
be proper subjects for legislation under section 6 of the
Homestead Article of the constitution.   Although there
has been no specific legislation of this character, it
seems to me that the constitutional prohibition of ex-
emption as to excessive improvements is as much man-
datory and self-executing as the grant of the exemption
of the homestead; so that if the courts undertake to al-
low the one they must disallow the other.   Under sec-
tions 2005-2007 Revised Statutes equity is given juris-
diction to order and decree the setting apart of home-
steads, and to enjoin the sale of exempt property, and
upon application of a judgment creditor to determine
whether any property real or personal claimed to be ex-
empt is so exempt, and if not exempt to subject it to
the satisfaction of the judgment.   The jurisdiction of
equity was invoked in the present case, by both the
debtor and the creditor, and it cannot evade a decision
of the question.   To the extent that a court of equity
can by the exercise of its rightful powers protect and se-
cure the debtor and the creditor and purchaser in the
enjoyment of the rights accruing to each, it should do
so; but it does not seem to me that it has authority to
enjoin the sale of property not exempt in order to give
the debtor full and complete enjoyment of that which is
exempt at the expense of the creditor's just rights, for
it is not "so nominated in the bond."   The court must

therefore proceed to set apart the homestead to the full extent contemplated by the constitution and enjoin its sale; but at the same time it must recognize the creditor's right to subject to sale every part of the property not exempt under the constitution. The court must so award it, for "the law doth give it." Rhodes v. McCormick, 4 Iowa 368, S. C. 68 Am. Dec. 663; Campbell v. White, 95 N. C. 491. The only claim made by appellant is that he was not given all the land and all the building as his homestead. He does not complain of any injustice in the allotment, conceding that he was not entitled to the whole. He was given the privilege of selecting the portion of the building to be set apart to him, but failed to avail himself of that privilege. The court thereupon set apart a portion of the building as a residence and business house and appellant does not claim that the allotment was in any respect unfair, or that the part assigned him is less in extent that that formerly used by him for residence and business purposes, or that it is insufficient for the comfort and convenience of the family, and for his business purposes. We should carry out the provisions of our homestead laws in the liberal and beneficent spirit in which they were enacted, but at the same time care should be taken to prevent them from becoming the instruments of fraud, and we should not permit a liberal interpretation to include within their scope excessive improvements which are excluded therefrom by positive language in the constitution. Drucker v. Rosenstein, 19 Fla. 191. I confess that I have found the question an exceedingly difficult one; that in allotting a residence and business house in buildings of this character the courts will experience great difficulty until some proper method is prescribed by the legislature, and that because of such

difficulty I have felt some hesitancy in announcing the views herein expressed. Nevertheless it seems to me after the most careful consideration that I am capable of giving to the question that the views expresed are correct, and that it is my duty to act upon them by affirming the decree appealed from.

The decree ought to be affirmed.

MABRY, J. (*After stating the facts*):

The lower court's ruling on the demurrer to the cross-bill and the exceptions of appellant to the answer of appellees are assigned as errors, but the only question argued by appelant is "can the court subject any part of the premises to the judgment of the defendants either by a sale of the premises or any part thereof?"

The abstract has not been excepted to by appellees and no question is raised by either party as to the validity of the abstract rule made by this court, and in obedience to it and previous repeated decisions of this court we must be governed by it. Allen v. Lewis, 38 Fla. 115, 20 South. Rep. 821. I entertain no doubt as to the power of this court to require a fair abstract of the transcript of the record in the case upon which errors are assigned and designed to be presented to this court, and when the parties agree upon the correctness of the abstract presented, there is no difficulty in disposing of the case thereon under a rule of court providing for the same. The construction heretofore placed upon the original abstract rule adopted by this court at its June term, 1895, does not preclude us from looking to the judgments and decrees of the lower court certified in the transcript, and while the abstract in this case gives the substance of the court's decrees, we set them out in full

in order that due consideration may be given to the conclusions of the court as to questions of fact.

The agreed statement of facts shows that the appellant, Smith, was the head of a family residing in this State at the time of the levy of the attachment in the case, and since, in a house as his home on a lot of land less than one-half acre in an incorporated city, and that the house was a frame building that could not be divided without destroying it. The particular rooms in the building occupied by Smith and his family are undertaken to be represented by a diagram alleged to be attached to the accompanying agreed statement, but no such diagram is exhibited, but it does affirmatively appear that Smith *bona fide* resided in the house on the lot as his home, and had no other, and that certain rooms upstairs were occasionally occupied by lodgers, and rooms downstairs were occupied by tenants. The court finds that the appellant occupied the building on the lot less than a half acre in extent as his home and was in fact entitled to a homestead exemption therein under the constitution, but it is also found that the house was so constructed as to give him more improvements than a residence and business house, and the finding establishes how this was done, *viz*: that five store rooms were on the ground floor, and the second floor was devoted to bed rooms occupied by Smith and his family, except one room that was vacant, and that four of the ground floor rooms were rented to tenants. It also appears from the court's finding that one of the ground floor rooms was occupied by Smith.

If it is clear that the final decree of the court is wrong in point of law, conceding the correctness of the finding as to facts that might have been shown by the missing diagram independent of the express stip-

ulation of the parties, then it should not be allowed to stand, and I think the pleadings, stipulation of the parties and finding of the court exhibited by the abstract, sufficiently present the only question argued by both parties here *viz*: whether under our laws an urban homestead residence that is indivisible, or that cannot be divided without destroying it, can be cut up and divided by order of court, though some of the rooms in the building are used as store rooms by third parties under rent contracts.

The constitution (Art. X, Sec. 1) provides that "a homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars' worth of personal property, and the improvements on the real estate, shall be exempt from forced sale under process of any court, and the real estate shall not be alienable without the joint consent of husband and wife when that relation exists; but no property shall be exempt from sale for taxes. or assessments, or for the payment of obligations contracted for the purchase of said property, or for the erection or repair of improvements on the real estate exempted, or for house, field or other labor performed on the same.  The exemption herein provided for in a city or town shall not extend to more improvements or buildings than the residence and business house of the owner, and no judgment or decree or execution shall be a lien upon the exempted property except as provided in this article."

In Kansas the provision as to urban homesteads was that a homestead of "one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improve-

ments on the same, shall be exempt from forced sale under any process of law, and shall not be alienable without the joint consent of the husband and wife when that relation exists." It was held that the word "homestead" represented the dwelling house where the family resides, and its tests were use and quality; that the question of whether a building was a residence did not depend upon the style in which it was built, or that it would be more valuable as a place of business than a dwelling house, but upon the fact whether it was actually used as a residence of the family; that the fact that a part of the building was leased to another who carries on a mercantile business in the part leased would not destroy its homestead character when the owner reserves the right of using it as the means of going to and coming from the part used as his home, and that where a small addition is built against the residence, and was used a part of the time as a butcher shop by the owner, and was sometimes leased as an office, such addition being a part of the homestead was exempt from forced sale. Bebb v. Crowe, 39 Kansas 342, 18 Pac. Rep. 223. See, also, Hogan v. Manners, 23 Kansas 551, S. C. 33 Am. Rep. 199; Rush v. Gordon, 38 Kansas, 535, 16 Pac. Rep. 700; Layson v. Grange, 48 Kansas 440, 29 Pac. Rep. 585. Though it was held in 20 Kansas 670, that where a lot (or part of a lot) with a house thereon was rented for a money rent to a tenant who was not a servant or an employe of the owner, with intention that such house and lot should become the home and residence of the tenant and his family, and they actually did become the home and residence of the tenant, such house and lot were not exempt, although the lot adjoined the homestead of the owner.

The homestead statutes of Wisconsin and Oklahoma provided as follows:

### WISCONSIN.

"A homestead consisting of any quantity of land not exceeding forty acres used for agricultural purposes, and the dwelling house thereon, and its appurtenances, to be selected by the owner thereof, and not included in any town plot, or city, or village, or instead thereof, at the option of the owner, a quantity of lands not exceeding in amount one-fourth of an acre, being within a recorded town plot, or city, or village and the dwelling house thereon, and its appurtenances, owned and occupied by any resident of the State, shall not be subject to forced sale on execution, or any other final process from a court, for any debt or liability contracted" after a given date.

### OKLAHOMA.

"The homestead of a family not in a town or city shall consist of not more than one hundred and sixty acres of land, which shall be in one tract or parcel with the improvements thereon. The homestead in a city, town or village, consisting of a lot or lots, not to exceed one acre, with the improvements thereon; provided, that the same shall be used for the purpose of a home for the family; provided, also, that any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired."

It was held under these statutes that a house built apparently for business purposes, but as claimed by the

Smith v. Guckenheimer & Sons.—Opinion of Court.

owner as a building to live in and a part of it to rent, in which he actually resided with his family as a home was entirely exempt from forced sale. The view taken was that the homestead meant the land not exceeding the prescribed amount, upon which the dwelling house, residence, habitation or abode of the owner and his family was situated, without regard to the prescribed manner or style of the building thereon, and was restricted only by the amount of the land mentioned in the act, and not by the value or use thereof, if in fact it be used as the dwelling house. Phelps v. Rooney, 9 Wis. 70, S. C. 76 Am. Dec. 244; Harriman v. Queen Insurance Co. of London and Liverpool, 49 Wis. 71, 5 N. W. Rep. 12; Binzel v. Grogan, 67 Wis. 147, 29 N. W. Rep. 895. Casselman v. Packard, 16 Wis. 114, S. C. 82 Am. Dec. 710, is not considered as conflicting. DeFord v. Painter, 3 Oklahoma 80, 41 Pac. Rep. 96.

Decisions in Minnesota, Nevada, Arkansas, Michigan and Illinois, on their respective homestead exemption laws, tend to strengthen the view taken by the courts in Kansas, Wisconsin and Oklahoma. Kelly v. Baker, 10 Minn. 154; Umland v. Holcombe, 26 Ibid. 286, 3 N. W. Rep. 341; Jacoby v. Parkland Distilling Co., 41 Minn. 227, 43 N. W. Rep. 52; Clark v. Shannon, 1 Nev. 568; Goldman v. Clark, Ibid. 607; Gainus v. Cannon, 42 Ark. 503; Simpson v. Biffle, 63 Ark. 289, 38 S. W. Rep. 345; Orr v. Shraft, 22 Mich. 260; King v. Welborn, 83 Ibid. 195, 47 N. W. Rep. 106. But it was held in Dyson v. Sheley, 7 Mich. 527, that where the owner of a city lot built a double house upon it in such a way as to show that he designed it for the use of two families, and not for one, and leased one part, occupying the other himself, the whole was not exempt. Hubbell

v. Canady, 58 Ill. 425; Stevens v. Hollingsworth, 74 Ill. 202.

In Iowa a different view prevails, but it seems that no other court has followed it. There it is held that it was not the intention of the law-making power to exempt an entire building or house for whatever used, because some portion of it is used by the owner as the homestead, and that if under the same roof with the homestead there shall be a floor or floor room or rooms, which are not used by the family as a home, they are no more exempt than if under another roof, or on another and different portion of the lot. Rhodes v. McCormick, 4 Iowa 368, S. C. 68 Am. Dec. 663; Mayfield v. Maasden, 59 Iowa 517, 13 N. W. Rep. 652; Smith v. Quiggans, 65 Iowa 637, 22 N. W. Rep. 907; Johnson v. Moser, 66 Iowa 536, 24 N. W. Rep. 32; Arnold v. Gotshall, 71 Iowa 572, 32 N. W. Rep. 508.

The Alabama court has been regarded as holding that the test of exemption is the principal use to which the property is devoted. It is said in one opinion that "where the trade adaptation and use of a building is incidental or secondary only to its habitation as a dwelling—where the chief use of the structure is that of a home for the owner, and some part only not essential to this end is fitted up and used as a shop, an office or salesroom—it is a homestead; but when this state of facts is reversed, and the residence feature is only auxiliary to the business use—where only a relatively small part of the building is devoted to the uses of habitation, and the chief adaptation and use are those of business—the building is not a homestead, even though the occupant have no other home, and uses this for all the purposes of living." Garrett v. Jones, 95 Ala. 96, 10 South. Rep. 702; Turner v. Turner, 107 Ala. 465, 18 South Rep 210.

This view finds support in much that is said in some decisions in California in construing homestead statutes there. Ackley v. Chamberlain, 16 Cal. 181, S. C. 76 Am. Dec. 516; Gregg v. Bostwick, 33 Cal. 220, S. C. 91 Am. Dec. 637; Tiernan v. His Creditors, 62 Cal. 286; Laughlin v. Wright, 63 *Ibid.* 113. But in later cases that court clearly holds that the use of a building partly, or even chiefly, for business purposes, or the renting of part of it, does not deprive the owner of the benefit of his exemption of the building as a homestead, if the building is and continues to be *bona fide* the residence of the family. Heathman v. Holmes, 94 Cal. 291, 29 Pac. Rep. 404; Lubbock v. McMann, 82 Cal. 226, 22 Pac. Rep. 1145, S. C. 16 Am. St. Rep. 108.

In Texas they have an express constitutional limitation in reference to urban homesteads, that they shall be used for the purposes of a home, or as a place of business to exercise the calling or business of the head of the family. The provision reads: "The homestead in a city, town or village shall consist of lot or lots not to exceed in value $5,000 at the time of their designation as a homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place of business to exercise the calling or business of the head of the family." It has been carefully considered in several cases brought before the courts of that State; among them are the following: Shyrock — Rowland v. Latimer, 57 Texas 674; Keith v. Hyndman, *Ibid.* 425; Wynne v. Hudson, 66 Texas 1, 17 S. W. Rep. 110; Bowman v. Watson, 66 Texas 295, 1 S. W. Rep. 273; Malone v. Kornrumpf, 84 Texas 454, 19 S. W. Rep. 607; Forsgard v. Ford, 87 Texas 185, 27 S. W. Rep. 57. In the last case cited it appeared that a two-story house eighty-

4

five feet long and twenty-five feet in width was built
upon a lot used as homestead; that the cellar, upper-
story, and over two-thirds of the first floor were in use
in homestead purposes, but the front part of first floor,
divided into two small rooms, was leased to tenants.    It
was held that the two small rooms could not become
subject to execution and thus become detached from the
home and that the whole was exempt.    The court holds
that the exemption is upon the land and that whatever
is attached to it so as to become part thereof must par-
take of the character of the realty. The view taken by the
Wisconsin court in Phelps v. Rooney is approved and
that entertained in Iowa is rejected.

In construing our constitution in reference to a
rural homestead this court said, in McDougall v. Me-
ginniss, 21 Fla. 362, that "when a party resides on the
land as a homestead, and the law is silent as to how much
of said land, other than that occupied by his house, he
shall use or cultivate, or in what manner he shall use it,
or that he shall use or cultivate it all, we do not feel at
liberty to amend the constitution of the State by the
interpolation of further provisions therein regulating the
manner or extent of the use of the homestead, or de-
claring that a non-user of a part while he remains on the
land is an abandonment of that part which takes from
it the benefit of homestead exemption.    In our view
the owner is only required by the constitution to live
on the land, and the whole one hundred and sixty acres
is exempt."    A different view announced by Judge
BRADLEY in Greeley, Assignee, v. Scott, 2 Woods, C. C.
Rep. 657, construing the same constitution, was disap-
proved.

As I understand the decisions similar to those cited
from Wisconsin and Oklahoma, the leading principle is

Smith v. Guckenheimer & Sons.—Opinion of Court.

that the courts are not authorized to incorporate into
the constitution or statute by construction any other
conditions than those expressly declared therein.  The
conditions of occupancy and residence, included in the
popular meaning of a term homestead, and being a citi-
zen and the head of a family usually required, must be
shown in order to put one in the condition to avail him-
self of the homestead exemption, but beyond those pre-
scribed in the law the court should not go.  If there
were no other limitations expressed in our constitution
as to urban homesteads than those applicable to rural
dwellings, we would have to hold, consistently with our
decision in McDougall v. Meginniss, and a great many
others herein cited, that an actual residence by the head
of a family upon the half acre in any incorporated city
or town would secure its exemption as a homestead
without reference to other uses to which it might be de-
voted or the improvements placed thereon.  But it is
clear that there are limitations applicable to homesteads
provided for in cities and towns that do not apply to
those in the country, or out of incorporated cities and
towns.  This limitation is in the clause which provides
that "the exemption herein provided for in a city or
town shall not extend to more improvements or build-
ings than the residence and business house of the
owner."  This clause should be considered in the nature
of a proviso, and as such it should be so construed as to
take nothing out of the section that is not clearly and
fairly within the terms of the proviso.  State *ex rel.* Mc-
Quaid v. Commissioners of Duval County, 23 Fla.. 483,
3 South. Rep. 193.  As applicable to this case, the first
part of the section provides that a homestead to the ex-
tent of the half of one acre within the limits of any in-
corporated city or town, owned by the head of a fam-

ily residing in this State and the improvements on the real estate, shall be exempt from forced sale under process of any court. The exemption applies to the land and the improvements thereon, without regard to value. The limitations in this part of the section are as to quantity, the half of one acre, and that it shall be the homestead of the owner, a resident of this State and the head of a family. Under the further limitation in the nature of a proviso the exemption does not extend to more improvements or buildings than the residence and business house of the owner, but it does unquestionably extend to the improvements or buildings constituting the residence and business house, and the clear mandate of the constitution is that the homesteader shall not be deprived of them under process of any court. In furtherance of the humane objects and policy of this homestead exemption this court, in harmony with practically all others, has declared that a liberal construction shall obtain. Patterson v. Taylor, 15 Fla. 336; McDougall v. Meginniss, 21 Fla. 362. The homestead within the meaning of the exemption clauses of our constitution and statutes is the place of actual residence of the homesteader and his family, and when a person is otherwise entitled to avail himself of the exemption, it is actual residence as a home that imparts to a building the character of a homestead residence. The homestead section does not, nor any limitation in it, contain any requirement as to the cost, style or architectural plan of the residence, or how a building that is entire and really used as a homestead shall be otherwise used. The Texas court has lately rather strictly applied the express limitation in their constitution as to the uses of a homestead residence and business house, but when confronted with the proposition to cut up an indivisible house, a nega-

tive answer was given. Forsgard v. Ford, *supra*; Weidemeyer v. Bryan (Texas), 53 S. W. Rep. 353. As I understand the Texas decisions the principal use will determine the character of a homestead, and this excludes the notion of dividing up a building that is entire. Where there is an entire indivisible building used in fact as a homestead residence, no court has undertaken to cut it up because some rooms in it have been rented out, except in Iowa, and when questions arose there as to homestead rights in a joint stairway, or how the joint owners should maintain the building, or who should be responsible for damages resulting from neglect in respect to the same, regrets were expressed that such a doctrine had been established. It is certain that the Iowa view has not impressed itself upon any other court in this country that has spoken on the subject. It seems to me that the difficulties confronting any court in the act of plunging into the cutting doctrine are enough to induce the belief that the framers of our constitution never contemplated such a result.

It is clear to my mind that our statutes providing for the setting apart of homesteads (sections 1998, 1999, 2000 and and 2001 Revised Statutes) do not contemplate the cutting up and division of an entire indivisible building situated on exempt real estate, nor has such power been conferred by statute upon courts of chancery. I think that when a homesteader places upon the exempt half acre improvements or buildings detached from and other than the residence and business house, or when improvements are so placed that they constitute separate improvements from the residence or business house, they, together with the land supporting them, become subject to execution sales, but such is not the case before us.

The result of the decision in this case must be regretted, on account of the uncertainty that has been brought about in the homestead law in this State. As it is impossible for me to accept as correct the conclusions of either of the other members of the court, I can only state what I deem the correct legal view. In my judgment the decree should be reversed.