## THE JAMES G. SWAN.

### UNITED STATES v. THE JAMES G. SWAN et al.

(District Court, D. Washington, N. D.   December 7, 1896.)

1. SEAL FISHERIES—BEHRING SEA—FORFEITURES.

Upon forfeiture of a vessel, for a violation of the act of congress of April 6, 1894, relative to sealing in Behring Sea, the crew of such vessel are not entitled to share in the proceeds of the sale to the extent of the wages due them.

2. SAME—FORFEITURE OF SEAL SKINS.

Upon such forfeiture, seal skins, forming part of the cargo, which were taken outside the prohibited limits, and before any violation of the act occurred, are not subject to forfeiture.

3. SAME—INTENT—EQUIPAGE OF VESSEL.

Forfeitures under said act do not depend upon questions of intent on the part of the owners of the vessel or her equipage, and, accordingly, instruments forming part of her equipage, though belonging to others than her owners, are forfeited.

In Admiralty.

Libel of information by William H. Brinker, United States attorney, alleging forfeiture to the United States of the schooner James G. Swan, her tackle, apparel, furniture, and cargo, by virtue of section 8 of the act of congress of April 6, 1894, entitled "An act to give effect to the award rendered by the tribunal of arbitration, at Paris, under the treaty between the United States and Great Britain concluded at Washington, February twenty-ninth, eighteen hundred and ninety-two, for the purpose of submitting to arbitration certain questions concerning the preservation of fur seals," which reads as follows: "Sec. 8. That, except in the case of a master making a false statement under oath in violation of the provisions of the fourth section of this act, every person guilty of a violation of the provisions of this act, or of the regulations made thereunder, shall for each offense be fined not less than two hundred dollars, or imprisoned not less than six months, or both; and all vessels, their tackle, apparel, furniture and cargo, at any time used or employed in violation of this act or of the regulations made thereunder, shall be forfeited to the United States,"—and alleging, as cause for forfeiture, that the schooner James G. Swan was, on the 5th day of August, 1896, found employed in killing and capturing fur seals in the waters of Behring Sea, within the limits of a zone of 60 geographical miles surrounding the Pribilov Islands, in violation of the first section of said act, which reads as follows: "That no citizen of the United States, or person owing the duty of obedience to the laws or the treaties of the United States, nor any person belonging to or on board of a vessel of the United States, shall kill, capture, or pursue, at any time, or in any manner whatever, outside of territorial waters, any fur seal in the waters surrounding the Pribilov Islands within a zone of sixty geographical miles (sixty to a degree of latitude) around said island, exclusive of the territorial waters." 28 Stat. 52–55. The owners of the vessel have appeared as claimants, and filed an answer denying that the vessel was at any time employed in violation of law. The members of the crew have also intervened, and by their pleadings deny that any forfeiture has been incurred, and asserting innocence on their part of any intention to violate the law, and that, inasmuch as the law does not specifically declare a forfeiture of wages, they are entitled, in any event, to receive their wages out of the proceeds of a sale of the vessel and cargo. The intervener Beninghausen claims to be the owner of the chronometer which was used in the navigation of the vessel, and prays for restoration thereof. Findings and decree for the United States.

Wm. H. Brinker, U. S. Atty.

James B. Metcalfe, for claimants and interveners.

Henry F. McClure, for interveners.

HANFORD, District Judge (after stating the facts). By the un-contradicted testimony in this case it appears that the schooner James G. Swan was seized by the master of the United States revenue cutter Perry, in Behring Sea, on the 5th day of August, 1896. At the time of the seizure, there was found on board of her 53 fur seal skins in salt, which had been secured on the 2d day of August, in the waters of Behring Sea, outside of the prohibited zone, the canoes and boats used in pursuing seals were all away from the vessel, and, when called in, brought to the vessel the bodies of 40 fur seals, which had been taken during that day.

Whether or not a forfeiture has been incurred depends upon a disputed question of fact as to the position of the vessel at the time of the seizure; that is to say, whether she was then inside or outside of the prohibited zone. On the part of the government it is shown that, according to the observations and reckoning of the officer charged with the responsibility of navigating the revenue cutter Perry, the position of the vessel at the time of the seizure was 55 deg. 51 min. north latitude, and 170 deg. 39 min. west longitude, which would be approximately 4 miles within the circle of 60 miles from the Pribilov Islands. And it is also proven that, according to the reckoning and observations of Capt. F. L. Bangs, who was employed as navigator on board the schooner James G. Swan, the latter vessel was, at 8 o'clock a. m. on the 5th day of August, which was about two hours and a half before the seizure, in latitude 55 deg. 31 min. and longitude 171 deg. 13 min., which would be outside the circle, and that whatever distance was traversed on that day, after 8 o'clock, was in a southerly or southeasterly course, which would take her away from the prohibited zone, except as she might have made in the opposite direction by drifting with the current. According to his own testimony, Capt. Bangs determined his position on the morning of August 5th, in part by an observation then taken and in part by dead reckoning; and I do not find, in his testimony, or in the vessel's log, a statement in detail of the courses and distances sailed, by which his reckoning may be verified. On the other hand, Capt. Brown, navigating officer of the Perry, shows that his reckoning was verified and corrected by three different observations made during the day. The corroborating evidence is of no importance, for it only tends to prove that the positions of the vessels were determined by their respective navigating officers, as above stated. As I am obliged to decide in favor of one or the other of the two positions given, I must necessarily conclude that the navigating officer of the revenue cutter has given the true position, for the reason that the testimony shows great care on his part, and precision in ascertaining the true position, and verifying his work, and keeping an accurate record thereof, while Capt Bangs appears to have been to some extent negligent.

In the argument on behalf of the crew, it was insisted that the law does not declare a forfeiture of wages. Therefore, these men are entitled to share in the proceeds of the sale of the vessel and cargo, to the extent of the amount due them for wages. To this I

cannot agree. The law does, in positive terms, declare a forfeiture of the thing upon which these men claim to have a lien for their wages, and, according to all rules for the interpretation of statutes of this class, the forfeiture is entire; that is to say, the thing in its entirety is absolutely forfeited to the government. Counsel for the interveners has earnestly insisted that at least the 53 seal skins which were secured before any violation of the act should be released, and he contends that the forfeiture only extends to so much of the cargo of any vessel as shall have been used or employed in violation of the act. He would give effect to the words, "at any time used or employed in violation of this act, or of the regulations made thereunder," as referring to and governing all the preceding words of this sentence, including the word "cargo." The grammatical construction of the sentence, and the punctuation, it seems to me, give plausibility to this contention, for the statute belongs to the class of penal statutes, which must be strictly construed. Probably the true reading of the act would be this: All vessels at any time used or employed in violation of this act, or of the regulations made thereunder, shall, together with their tackle, apparel, furniture, and cargoes, be forfeited to the United States. But in the case of a penal statute it is very doubtful whether the court can assume so much latitude as to transpose the words of a sentence in order to change the meaning thereof. The forfeiture takes place regardless of any question of intent on the part of any owner of the vessel or her equipage or cargo, or any part thereof, or any interest therein. Therefore, although the hull of the vessel may have been owned by the claimants, and the chronometer owned by another person, the chronometer must be included in the forfeiture as well as the hull.

It is shown by the testimony that, on the 2d day of August, while the boats and canoes were engaged in sealing, one of the canoes, with two Indians belonging to the crew, became lost in fog, and that the vessel, in searching for them, sailed northward towards the prohibited zone; and that circumstance is given as a reason for the vessel having approached so near to the prohibited line, and it is shown by the testimony that, before engaging in sealing, she turned back on her course, and sailed a distance of 40 miles, measured by her patent log. But the witnesses who state the fact as to the distance measured by the log on the return give only an estimate or conjecture as to the distance sailed towards the prohibited zone before turning back, and the vessel was not cruising in search of her lost men at the time of the seizure, for her boats were then employed in sealing. In this, I think, they have failed to show good faith. But good faith, or the want of it, is not an element in the case. Let there be a decree as prayed for in the libel of information, except as to the 53 seal skins, which will be released.