## GOODWIN *et al.* v. BICKFORD.

No. 1651, Okla. T.   Opinion filed January 21, 1908.

(93 Pac. 548.)

1.   **COURTS—Rules of Court—Costs on Appeal—Requirement of Deposit.**  The district court of the territory of Oklahoma has no power to impose a rule requiring that a party appealing a cause from the probate court to the district court shall deposit with the clerk of the district court five dollars for costs of the clerk, and that a failure to do so within twenty days after the transcript of the trial court is deposited with the clerk shall be ground for dismissal of the appeal.

2.   **APPEAL—Rules of Trial Court  Part of Record.**  The rules of a trial court are part of the record of every cause tried therein.

3.   **SAME—Errors Apparent of Record.**  Errors apparent upon the judgment roll or record of a cause will be considered by this court, although no exceptions were taken thereto in the trial court.

(Syllabus by the Court.)

*Error from the District Court, Canadian County; before C. F. Irwin, Judge.*

Action by Will Carlton Bickford against John A. Goodwin and others.  Judgment for plaintiff.  Defendants bring error.  Reversed and remanded.

On July 1, 1903, the defendant in error filed his petition in the probate court of Canadian county, alleging, among other things, that he is the adopted son and only heir at law of Mary E. Hortop, who died on or about the 7th day of April, 1903, and that he is entitled to letters of administration upon her estate, and praying that such letters be issued to him.  On the 2d day of July, 1903, John A. Goodwin, one of the plaintiffs in error, filed his petition in the probate court of Canadian county, alleging, among other things, the death of Mary E. Hortop, and that Cynthia Rosenberger, Emma J. Masters, Nellie C. Bickford, Mrs. E. Carson Mason, James Dexter, and Mrs. —— Walker are heirs

at law of the decedent, and praying that letters of administration on the said intestate estate be issued to him. On the 14th day of July, 1903, the two petitions were heard together, and the court adjudged the defendant in error to be the adopted son of Mary E. Hortop, granted the prayer of the petition, appointed him administrator of the estate, and ordered the letters of administration thereon issued to him accordingly.

Thereupon the plaintiff in error appealed to the district court of that county. Afterwards, on August 25, 1903, the defendant in error filed a motion to dismiss the appeal of plaintiff in the district court, and assigned as his reasons therefor six grounds. On December 1, 1903, the court granted plaintiff leave to file a new and sufficient appeal bond. On December 4, following, plaintiff filed an affidavit in support of their motion resisting the motion to dismiss the appeal, and time to file a counter affidavit was extended until December 9th. On December 9th, as shown by the journal entry, the appeal was dismissed "for failure of the plaintiff to properly perfect his appeal by compliance with rule 14 of this court."

Plaintiffs in error come to this court by petition in error on transcript.

*M. D. Libby,* for plaintiffs in error.
*Geo. S. Pearl* and *J. G. Lowe,* for defendant in error.

HAYES, J. (after stating the facts as above.) Only one question is presented by the petition in error and argued by counsel for plaintiffs in error in their brief, and that is: Did the court err in dismissing the appeal for the failure of the plaintiffs in error to comply with rule 14 of that court, by making a deposit of five dollars to apply on the cost of the clerk of the district court, within the time prescribed by said rule? The portion of rule 14 affecting this case is:

"That in all cases appealed from a lower court to the district court of this district, the appellant shall, within twenty days from the time the papers in such appealed case shall have reached

the office of the clerk of this court, deposit with such clerk the sum of five dollars, to apply on costs of clerk in the district court, and the appellee shall, prior to the first day of the next term of the district court of the county in which such appeal arose, deposit with the clerk for costs the sum of three dollars. No appeal shall be placed on the docket of this court until the appellant shall have made the deposit herein provided for. Should the appellant fail to make deposit for the costs as herein required the appellee may pay the costs made in the district court on such appeal, together with the costs of docketing and dismissal, and such appeal shall, on motion of the appellee, be dismissed for failure to prosecute."

On August 25, 1903, appellee in the district court filed his motion to dismiss the appeal for failure of appellants to make the deposit as required by said rule 14. On the 7th day of December following, after the expiration of the 20 days provided for in rule 14, appellant deposited with the clerk of the district court five dollars. Plaintiffs in error in their brief assign as reasons why the action of the district court should be reversed that the dismissal of the appeal by the court was an abuse of legal discretion, and that the court had no power to prescribe said rule 14 requiring said deposit for costs, and that, on failure to comply with it, the appeal should be dismissed.

We shall consider the second reason assigned first; for, if it is well founded, it will not be necessary to consider the first reason assigned. It is a well-settled principle of law that courts, independent of any statutory provision, have the inherent power to make rules for the regulation of their practice and business, but they can make no rule that contravenes a statute or the law of the land. *Prindeville v. People of the State of Illinois,* 42 Ill. 217; *August Fisher v. National Bank of Commerce,* 73 Ill. 34; *Thomas Purcell v. Hannibal & St. Joseph Railroad Company,* 50 Mo. 504; *United States v. James G. Swan et al.* (D. C.) 77 Fed. 473. It can not be said that, in imposing costs and prescribing rules governing their collection, in the practice of a court a different rule from the one announced above applies, or that a court

has control over the same superior to the legislative department of the government, and that a court may make a rule governing the same in conflict with the statute, because courts had no power at common law to impose costs, and such power exists only when authorized by statute, and a court in prescribing rules relative to the costs authorized by statute to be. imposed by it cannot, in doing so, contravene a statute. *Maggie E. Bradford v. Southern Railroad Company*, 195 U. S. 243, 25 Sup Ct. 55, 49 L. Ed. 178. The Legislature of the territory of Oklahoma has provided a procedure governing an appeal from the judgment, decree, or order of the probate court, to the district court. Chapter 18 of the statutes of 1893, being the chapter on "Probate Procedure," contains the following provisions:

"1483. An appeal may be taken to the district court from a judgment, decree, or order of the probate court: First, granting or refusing, or revoking letters testamentary, or of administration, or of guardianship."

"1487. The appeal must be made: First—by filing a written notice thereof with the judge of the probate court * * * and, second—by executing and filing within the time limited, * * * such bond as is required in the following sections. It shall not be necessary to notify or summon the appellee or respondent to appear in the district court, but such respondent shall be taken and held to have notice of such appeal in the same manner as he had notice of the pendency of the proceedings in the probate court.",

"1495. The judge of the probate court must, within ten days from the filing of the notice of appeal, and the giving of the required bond, cause a certified copy thereof and of the judgment, decree, or order, or specific part thereof appealed from * * * to be transmitted to the clerk of the district court of the county or judicial subdivision, to be filed in his office, and the appeal may be heard and determined at any day thereafter by said court, at any general, special or. adjourned term; and if the appellant make no appearance when the case is called for trial, or otherwise fail to prosecute his appeal, the respondent may, on motion, have the appeal dismissed. * * *"

"1500. Such appellate court may award to the successful

parties the cost of the appeal, or it may direct that such cost abide the event of a new hearing, or of the subsequent proceedings in the probate court. In either case, the costs may be made payable out of the estate or fund, or personally by the unsuccessful party, as directed by the appellate court, or, if no such direction be given, as directed by the probate court."

By these provisions and other sections of the chapter quoted from, the Legislature of the territory of Oklahoma has provided a complete procedure for perfecting an appeal from the probate court to the district court, and has prescribed in detail the things necessary to be done. These provisions of the statute were, on March 3, 1891, c. 543, § 17, 26 Stat. 989, ratified by Congress (Supp. Rev. St. vol. 1 [2d Ed.] p. 929). *Wetz v. Elliott et al.,* 4 Okla. 618, 51 Pac. 657; *Decker v. Cahill,* 10 Okla. 251, 61 Pac. 1101. But, aside from any virtue or power these provisions may have received from the act of Congress approving them, they are valid enactments of the territorial Legislature. Congress, in establishing a government for the territory of Oklahoma, divided the government into three branches—executive, legislative and judicial. In defining the powers of these different branches of the government it provided:

"That the legislative power of the territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States."

It is true that Congress granted, by the organic act, some legislative powers to the Supreme Court; but the subjects upon which it could legislate are clearly defined and limited, and matters therein specified as subjects upon which the court can legislate do not include the subjects of the provisions of the statutes cited, *supra.* . It has been the practice of Congress, in establishing governments for territories, to commit to the Territorial Assembly the matter of providing for the manner of taking and perfecting appeals. *James Hornbuckle v. John Toombs,* 18 Wall (U. S.) 648; 21 L. Ed. 966. In this case Mr. Justice Bradley ,in speaking for the court, says:

"Whenever Congress has proceeded to organize a government for any of the territories it has merely instituted a general system of courts therefor, and has committed to the Territorial Assembly full power, subject to a few specified or implied conditions, of supplying all details of legislation necessary to put the system into operation, even to the defining of the jurisdictions of the several courts. * * * From a review of the entire past legislation of Congress on the subject under consideration, our conclusion is that the practice, pleadings, and forms and modes of proceedings of territorial courts, as well as their respective jurisdictions, subject, as before said, to a few expressed or implied conditions in the organic act itself, were intended to be left to the legislative action of the Territorial Assemblies, and to the regulations which might be adopted by the courts themselves."

The Legislature of the territory of Oklahoma had power to enact laws regulating the procedure in the courts of the territory and prescribing the manner of taking and perfecting appeals from the inferior courts to the superior courts. *Territory of Oklahoma v. W: A. Stroud*, 6 Okla. 106, 50 Pac. 265; *Chas. W. Bailey and Harry Plummer McCool v. Territory of Oklahoma*, 9 Okla. 461, 60 Pac. 117.

The plaintiffs in error and the defendant in error have cited the cases of *Dooley v. Foster*, 5 Kan. 269, and *Coleman v. Newby*, 7 Kan. 83. Defendant in error insists that the decisions in these cases support the theory of his case. A close examination of *Dooley v. Foster* will disclose that the court in that case did not decide whether the district court had power to make the rule in question or not. That case was determined upon the theory that the appellee had waived the requirements of the rule in controversy. Justice Valentine, in rendering the opinion in the case, said that he announced the opinion of the court without considering whether the rule in question was valid or invalid. In the case of *Coleman v. Newby, supra*, no opinion of the majority of the court was given, except a statement made by Justice Brewer affirming the action of the trial court. We cannot infer otherwise than that the majority of the court in that case reached its opinion by decid-

ing that the rule in controversy was not in conflict with the statute of Kansas governing appeals from justices of the peace to the district court. For the court to have held that the district court had power to make a rule contravening the statute would have been against the great weight of authorities.

In the case at bar the Legislature of the territory of Oklahoma has, by statute, prescribed in detail how an appeal shall be taken from the probate court to the district court and perfected. It has said that a written notice thereof and a bond must be filed with the probate judge; that within 10 days thereafter a certified copy of certain documents must be transmitted by the probate judge to the clerk of the district court to be filed in his office, and that it shall not be necessary to notify or summon the appellee in the case; that the case may be heard at any time during the next general or special term of the court after the appeal has been transmitted to the clerk's office to be filed; and that, if the appellant make no appearance when the case is called, the appeal may be dismissed. We could hardly conceive of a statute that could prescribe more specifically the detailed requirements necessary to perfect an appeal, and how the same shall be disposed of; but it does not require that any deposit for costs shall be made in order to perfect the appeal. On the contrary, it is specifically provided that after the appeal has been transmitted by the probate judge to the district clerk, to be filed in his office, without even a summons or notice to defendant in error, the case may be heard at any day of any general or special term of the court, and that if, when the case is called, appellant does not appear, the same may be dismissed on motion of the appellee. There is nothing in this statute that will permit the construction that anything else than what is mentioned therein is required to be done, or may be required to be done, by the court before the appeal is perfected; and under the language of the statute, when the appeal has been perfected, it may be heard at any general or special term of the court. Any rule of the court requiring ad-

Vol. 20—7

ditional things to be done by the appellant than those prescribed by the statute herein quoted would contravene the statute and would be invalid.

The case of *Cunningham v. Quinn,* 12 Colo. 473, 21 Pac. 488, was a petition to the Supreme Court of Colorado for a writ of mandamus to compel the respondent (Quinn), who was the county Judge and acting county clerk, to accept and file a certain bond and notice of appeal upon the relator's paying the legal fees therefor. Under the rule of the county court, which was as follows: "The clerk of this court may require a party appealing from the judgment or order of this court to the district court, or Supreme Court, that he or she or they pay all accrued costs before taking any further steps in the case," respondent Quinn refused to file the appeal bond and notices unless all accrued costs were first paid by relator. Notwithstanding the statute of Colorado contained a provision that gave the officers of the court the right to collect their legal fees in advance, the court in awarding the writ of mandamus, said:

"The right of appeal from the county courts to this court is also a statutory right, and that statute provides the manner in which such appeal may be perfected, and no rule of court can deprive a party of this right, or impose additional burdens as conditions precedent to its exercise. Under the statute a party praying for an appeal is required to file a bond 'in a reasonable sum sufficient to cover the amount of the judgment appealed from and costs, conditioned for the payment of judgment, costs, interest, and damages in case the judgment shall be affirmed'; but we know of no statute by which he may be required to pay the accrued cost in the case at the time of perfecting the appeal, and in the absence of such statutory authority, the right of the clerk to impose such a condition cannot be maintained."

The case of *Wescott v. Eccles,* 3 Utah, 261, 2 Pac. 525, is a case commenced in a justice court in the territory of Utah. From a judgment against the appellant he appealed to the district court. After appellant had complied with all the requirements of the statute for perfecting his appeal the justice before whom the

case was tried deposited the files of the case with the clerk of the district court, but the appellant failed to file the transcript from the justice's docket and all papers accompanying the appeal with the clerk of the district court within 30 days before the commencement of the term of court, and to perfect the appeal within the first 2 days of the term as was required by rule of the court. The district court, on motion of the appellee, dismissed the appeal because of appellant's failure to comply with said rule of the court. The Supreme Court of the territory, in reversing the judgment of the district court, said:

"When the appellant has complied with the statutory requirements, it then becomes the duty of the justice to transmit the papers to the clerk of the district court, and when they are received by him, they are filed whether he ever indorses the filing on them or not. 'A paper is said to be filed when it is delivered to the proper officer.' Bouv. Law Dic. tit. 'File.' We do not propose to discuss the power of the district court to make rules for its government It is not necessary to the decision of this case. It is proper, however, to state that no court can by rule deprive a party of a right which is given to him by statute. * * * The decision of this court is placed upon the ground that the appellant having fulfilled all the requirements of the law in order to perfect his appeal, his right to a trial in the district court, so far at least as concerns this motion, had become absolute, a right given by the statute of which he could not be deprived by rule of court. * * *"

The same doctrine is announced by the court in the case of *City of Pekin v. M. C. Dunkleburg*, 40 Ill. App. 184.

The Supreme Court of Utah, in the case of *Salt Lake City v. Redwine*, 6 Utah, 335, 23 Pac. 756, held that the district court had power to prescribe a rule such as was held in the case of *Wescott v. Eccles, supra,* could not be prescribed by the district court; but the court in the case of *Salt Lake City v. Redwine* distinguishes very clearly that case from the case of *Wescott v. Eccles* by saying that, in holding that the court had such power, its opinion was based on the fact that the court derived such power from a general statute of Utah, which had not been enacted at the time the

opinion was rendered in the case of *Wescott v. Eccles.* The court clearly held that its power in that case to prescribe such a rule was derived from a statute.

If the district court of Oklahoma had been vested with such power by act of Congress, it then probably could be contended that the Legislature was without power to enact such statute; but we have not been able to find any such act of Congress, and from the opinion cited, *supra*, it is seen that the Legislature of the territory of Oklahoma had power to prescribe by statute procedure in the courts of the territory of Oklahoma. It is therefore our opinion that the district court of Canadian county in dismissing the appeal of plaintiffs in error committed error.

But defendant in error insists that this appeal should be dismissed for the reason that no exception was taken by the plaintiffs in error to the order of the district court in dismissing their appeal. The transcript of the record contains the order of the district court dismissing the appeal and rule 14 of that court. In the order of dismissal it is specifically stated by the court that the appeal was dismissed "for failure of the plaintiff to properly perfect his appeal by a compliance with rule 14 of this court." The ground upon which the order or judgment of dismissal was made having been made a part of the judgment of the district court, this court cannot assume that the trial court may have acted upon a different ground. *Holland v. Great Northern Ry. Co.,* 93 Minn. 373, 101 N. W. 608. Rule 14 was certified by the lower court as a part of the record, and properly so, for the rule of a trial court is a part of the record in every case tried therein. *Walla Walla Printing & Publishing Co. v. Budd et al.,* 2 Wash. T. 336, 5 Pac. 602.

It has been repeatedly held by the Supreme Court of the territory of Oklahoma that it would review and correct errors that were apparent upon the judgment roll or record of the case, although no exceptions had been taken thereto. *Territory v. Caffrey,* 8 Okla. 193, 57 Pac. 204; *Caffrey v. Overholser,* 8 Okla. 202,

57 Pac. 206; *Kellogg v. School District* No. 10, 13 Okla. 285, 74 Pac. 110.

It is therefore the judgment of this court that this cause be reversed and remanded, with instructions that the order of the trial court dismissing the appeal be set aside, and the appeal reinstated.

All the Justices concur.