*In Re:* PETITION OF FLORIDA STATE BAR ASSOCIATION FOR
PROMULGATION OF NEW FLORIDA RULES OF ·CIVIL PRO-
CEDURE.

199 So. 57
En Banc
Opinion Filed December 3, 1940

Florida State Bar Association, *D. H. Redfearn,* Chairman, *Wm. H. Rogers, E. Dixie Beggs, James Whitehurst, Fred M. Burns, John M. Murrell* and *J. Velma Keen,* President, *John Dickinson,* Secretary, *A. Lance Lazonby,* President, Junior Section, *Charles Cook Howell, Jr.,* Secretary Junior Section, for Petition;

*Martin H. Long, Adair, Kent, Ashby & McNatt, Clarence G. Ashby, L. R. Milton, Austin Miller, J. Turner Butler, Dewey A. Dye, L'Engle, Shands, McCarthy & Lane, E. J. L'Engle, Edward McCarthy, Jr., Herbert U. Feibelman, Joe Hill Williams* and *Leitner & Leitner* of Arcadia, opposing Petition;

*M. G. Rowe* and *Gramling & Gramling, Amicus Curiae.*

TERRELL, C. J.—As we understand the contention of the petitioners, it proceeds on the theory that this Court has inherent power to adopt the Florida Rules of Civil Procedure, that there is an urgent necessity for their adoption and that the showing made is ample to grant the petition.

Few subjects in the law have been bruited and discussed more than the inherent power of the courts to make rules. This Court has approved the doctrine but it has never attempted to limit or define the scope of its power in that

field. Petition of the Florida State Bar Association, 134 Fla. 851, 186 So. 280.

If not limited in the Constitution, the great weight of authority in this country supports the view that courts have inherent power to make rules governing contempt, admissions to the bar, and for the conduct of the business brought before them. They have no power to affect substantive law or jurisdiction.

In any event, the question must be approached in the light of the dominant law of the State concerned. Some of the State Constitutions are silent on the subject; some of them confer the rule-making power exclusively on the courts; some of them vest it in the Legislature while others divide it between the courts and the Legislature. Florida appears to fall in the latter class since Section 20 of Article III of the Constitution, among other things, provides that the Legislature shall not pass special or local laws regulating the practice of courts of justice, except municipal courts. Section 21 of the same article requires that all such laws be general and of uniform operation throughout the State.

I do not construe these provisions to be exclusive but supplemental to the power of the courts to prescribe rules regulating contempts, admission to the bar, and for the conduct of judicial business. Certainly they authorize the Legislature to enter these fields and when so entered, legislative acts will be respected by this Court. Smith v. Guckenheimer & Sons, 42 Fla. 1, 27 So. 900. Section 4682, Compiled General Laws of 1927, authorizes this Court to make rules of practice to govern process, judgments, and to prescribe forms in all courts provided that they do not conflict with Acts of the Legislature.

As the law on the point now stands, the Legislature may prescribe rules of practice and this Court may prescribe such rules not inconsistent with those passed by the Legislature

but those passed by the Legislature will not be respected if they hamper the administration of justice or are for any reason unconstitutional. The Legislature has also regulated admissions to the bar which have been supplemented and observed by this Court. The Legislature has also defined and in some respects regulated contempts and its entry into that field has been respected by us.

The fact of one department being clothed with inherent power does not necessarily mean that all others are excluded. When another power as here is permitted to operate in the same field, it follows that the field of inherent power is narrowed. At best, the rule-making power covers a narrow field and this is true because legislation is not a judicial function. To impress by comparison, it may be said that given its full scope, the rule-making power is in proportion to that of the Legislature as the power of Congress is to that of the town council of a Florida town of five hundred people.

The state of the law in Florida is typical of the development of common-law procedure; while generally understood to be court made, it is in reality a medley of rules of court and legislative Acts, the former being more evident. This notwithstanding the fact that the general concept of the doctrine of the separation of powers is that of three independent departments each supreme in its field. The root of this doctrine may be traced to Cicero and Aristotle but it was converted into a political philosophy by Locke and Montesquieu and was first put in practical application by the Constitutions of this country. There has never been a time in the history of this doctrine when the powers of one department have not depended on or have been aided in some way by those of another.

It was admitted at the bar that this Court was powerless to promulgate a rule which had the effect of enacting or

repealing a statute involving jurisdiction or substantive law.

It is shown, however, that the proposed rules of civil procedure will amend, modify, or repeal more than 350 statutes. The limits of procedural and substantive law have not been defined and no two would agree where the one leaves off and the other begins. There is also between the two a hiatus or twilight zone that has been constantly entered by the courts and the Legislatures. Petitioners contend that none of the proposed rules affect substantive law but suggest that if there be such, they should be discarded. We have examined the affected statutes and I think many of them go to matters of substantive law and jurisdiction.

, Another element that lends confusion to the situation is that the current of substantive law and procedural law often coalesce. What is regarded as substantive law today may become procedural law tomorrow and vice versa. Conflicts on this point have given rise to powers that are said to be not strictly legislative or judicial and when this is the case, the power of the Legislature is dominant. A wealth of experience teaches that court-made rules have worked much more effectively than legislative-made ones. For this reason, the tendency of late years'has been to pass enabling Acts authorizing the Court to occupy the field to the exclusion of the Legislature.

. Chapter 13870, Acts of 1929, authorizing this Court to make rules, forms, process, writs, pleadings and motions affecting its procedure is typical of this class of legislation. The Act of 1934 authorizing the Supreme Court of the United States to regulate civil procedure in the federal courts was necessary because of the Conformity Act of June 1, 1872, requiring federal courts to conform to state procedure and is another example. These statutes serve the following purposes: (1) They determine what court in

the judicial system may exercise the rule-making power, and to what extent it may be exercised; (2) They settle any question as to what forum shall exercise the rule-making power in those cases where procedural law and substantive law overlap, and (3) They may enlarge the power of the rule-making court to repeal conflicting statutes and in other ways harmonize apparent conflicts in jurisdiction.

We are therefore convinced that the petition to adopt and promulgate the Florida Rules of Civil Procedure should be denied because:

(1) The said rules are designed to govern subordinate courts in the judicial system of this State, most of which are constitutional courts with defined jurisdiction and this Court has no supervisory jurisdiction over them nor is it now authorized to make rules for their governance.

(2) The said rules affect more than 350 statutes, many of which deal with questions of jurisdiction and substantive law which this Court is wholly without power to repeal or modify by rule.

(3) It would be impossible to separate the rules that affect procedural statutes from those which affect substantive or jurisdictional statutes and to attempt it would create confusion and uncertainty in procedure that we would be a generation construing and straightening out.

(4) The power of this Court is limited to adjudicating controversies brought before it. By Chapter 13870, Acts of 1929, the Legislature in effect abdicated its right to make rules governing the Supreme Court but it refused to do so as to subordinate courts and having no supervisory power over the latter, the Supreme Court cannot now make rules governing them nor repeal those made by the Legislature in the absence of legislative authority to do so.

In this, we do not overlook the reasons urged for im-

proving judicial procedure but it takes more than public urgence to clothe the Court with power where none existed before. It is inconceivable that litigants of the present who transact business by the press of a button, the aid of a dictaphone, or the switch of a gadget, who ride in high-powered cars, traverse the continent overnight by airplane, hop to Europe by Clipper, and spend the weekend in Miami out of New York, would be content like Balaam, to travel the highway to justice on the back of an ass, and if ultimately secured, record it at the point of a goose quill in the light of a tallow dip. I think we owe it to society to hike the administration of justice off the ass, but for the reasons stated, we refuse to twit those who are reluctant to abandon him for the means proposed. This stupid old quadruped is the moron of the equine genus but he is the symbol of our democracy, hence it is not strange that as lawyers we have acquired an affinity for him akin to reverence. We officiated at the manger of the thing he symbolizes and by large have been its most consistent defenders. If ever it vanishes from earth we will be there to chant a requiem at its tomb.

The processes of democracy are often slow and tedious, resulting from safeguards and restraints that have been imposed on it but when the reason is revealed, they were all imposed for a righteous purpose. Changing conditions may outmode these restraints but if so they should be cast aside and new ones imposed by orderly procedure. Usurpation is the arch foe of the democratic process.

The petition of the Florida State Bar Association is therefore denied.

It is so ordered.

WHITFIELD and BROWN and THOMAS, J. J., concur.

BUFORD and CHAPMAN, J. J., dissent.

Justice ADAMS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

WHITFIELD, J. (concurring with TERRELL, C. J.).—The Constitution of 1885 provides that: "The Legislature shall not pass special or local laws . . . regulating the practice of courts of justice, except municipal courts." Sec. 20, Art. III. In such cases "All laws shall be general and of uniform operation throughout the State." Sec. 21, Art. III.

The quoted organic provisions constitute an express recognition of the continuing power of the legislative department to enact general statutes "regulating the practice of courts of justice;" as had been done by the Territorial Legislative Councils under Acts of Congress and by the Legislatures of the State under the "legislative power" vested in the "General Assembly" by the Constitutions of 1838, 1861 and 1865, and under "the legislative authority" vested in the "legislature" by the Constitutions of 1868 and 1885.

Such legislative "power" or legislative "authority" is not exclusive of the "judicial power" vested in the Supreme Court by the Constitution which may include the power to adopt rules of practice for the courts; but as the legislative power or authority to regulate court practice by general laws is expressly authorized by the Constitution, and the judicial power of the Supreme Court to adopt rules regulating practice in the courts, is only inferred or implied from the express vesting of judicial power of the Court, Section 1, Article V, and from the express provisions of Section 4, Declaration of Rights that 'all courts in this State shall be open" and "by due course of law . . . right and justice shall be administered without sale, denial or delay," together with the express powers conferred upon the Supreme Court by Sections 1 and 5, Article V, of the Constitution of 1885, it

seems clear that the Constitution does not contemplate that rules of practice adopted by the Supreme Court for the courts of the State that are inconsistent with law, shall supersede statutory regulations of the same subjects of practice in the courts while the statutes remain in force. But statutes may provide that when rules of practice are adopted by the Supreme Court conflicting statutory regulations shall cease to be in force. Certainly a court rule cannot repeal a statute though in proper cases the Court may adjudge a statute to be unconstitutional. Webster v. Powell, 36 Fla. 703, 18 So. 441.

Section 4, Article V, of the Constitution of 1885, as amended in 1902, contains the following: ". . . the (Supreme) Court may . . . exercise any of its powers . . . under such regulations as may be prescribed by law or by the rules of said Court not inconsistent therewith. . . ."

The result is that the Supreme Court has no power to adopt and enforce any rule of practice in the courts of this State where there is a *valid* statute completely regulating the same subject, unless the pre-existing *valid* statute is rendered inoperative by some appropriate and efficient legislative action duly taken, to be effective prior to, or upon, the adoption by the Supreme Court of valid Rules of Practice in the courts of justice of this State. See Chapter 13870, Acts of 1929, Sec. 4682 (1), 1936 Perm. Supp. to C. G. L.; City of Hollywood v. Blair, 126 Fla. 413, 171 So. 237. These views are in accord with all the decisions of this Court.

Amended Rule 34, adopted April 30, 1939, effective May 1, 1939, provided for the review and determination on interlocutory writs of certiorari of causes in which interlocutory appeals are authorized by Section 4961 (2169) C. G. L., is not inconsistent with law. Rule 34 does not repeal Section 4961 (3169) C. G. L.; and such rule is

authorized by Chapter 13870, Acts of 1929, Sec. 4682 (1) Perm. Supp. C. G. L., and by the provisions of Section 5, Article V, of the Florida Constitution that the Supreme Court "shall have the power to issue writs of mandamus, certiorari, prohibition, quo warranto, habeas corpus, and also all writs necessary or proper to the complete exercise of its jurisdiction."

TERRELL, C. J., BROWN and THOMAS, J. J., concur.

BROWN, J. (concurring with Mr. Chief Justice TERRELL and Mr. Presiding Justice WHITFIELD).—The Florida State Bar Association is to be commended for its active interest in this important matter of improving and simplifying court procedure in this State, so as to make possible the speedier adjudication of litigated cases, but I agree with Mr. Chief Justice TERRELL and Mr. Presiding Justice WHITFIELD that before this Court can consider or adopt new rules of procedure for the trial courts of this State, the effect of which would be to repeal or modify several hundred statutes heretofore adopted by the Legislature of Florida and recognized as valid and constitutional by this Court in a long line of decisions, it would first be necessary to secure the passage by the Legislature of an Act in the nature of an enabling Act. The State Bar Association has itself recognized the power and authority of the Legislature under our Constitution to enact statutes governing practice and procedure in our courts, by successfully applying to and securing the passage by the Legislature of the excellent Chancery Practice Act of 1931, the comprehensive Probate Act of 1933 and the Criminal Procedure Act of 1939, both of which latter Acts deal with both procedural and substantive law, and some of the distinguished attorneys and members of the State Bar Association who took part in getting this remedial legislation drafted and adopted by the Legislature have led briefs opposing the granting of this petition.

In England, during the past century, the bench and bar were ultra conservative and were reluctant to make any important changes in the existing system, and it was not until Parliament became aroused and took legislative action in the premises that any thorough-going reforms in judicial procedure were enacted and put into effect. Without expressing any opinion as to the wisdom of putting into effect in this State of the new Federal Rules of Civil Procedure, in whole or in part, or with or without the modifications suggested by the Florida Bar Association in this amended petition now before us, we might appropriately observe that it is highly to the credit of the lawyers of Florida that for more than a decade, without waiting for laymen to take the lead, they have, in the interest of the general public, through their State organization, been energetically seeking to improve our judicial procedure, so as to make it more responsive to the needs of the present day.

Section 1, Article III, of the Federal Constitution provides that, "The judicial power of the United States shall be vested in one Supreme Court, and in such other inferior courts as the Congress may from time to time ordain and establish."

This is quite similar to the language of Section 1, Article V, of our Florida Constitution, which vests the judicial power of the State not only in the Supreme Court, but also in the circuit courts and other trial courts of the State.

In a recent letter from Honorable Homer Cummings, former United States Attorney General, to Honorable Herbert S. Phillips, United States Attorney, of Tampa, congratulating the latter upon his speech at Sarasota, urging the adoption by this Court of the Federal Rules' of Civil Procedure, which letter was published in the November, 1940, issue of the Florida Law Journal, Mr. Cummings, among other things, said:

"The question that you raise is an interesting one. The reason why the Supreme Court of the United States could not adopt and promulgate the the Rules without legislative authorization is that it was expressly barred from doing so by a previous Act of Congress, the so-called Conformity Act of June 1, 1872 (U. S. Code, Title 28, Sec. 724), which required the Federal Courts to conform to State procedure in respect to actions at law. It was necessary to secure a repeal of this positive limitation. For that reason, the Act of 1934 was required to enable the Supreme Court to regulate civil procedure by rule. "In the absence of any legislation on the subject the courts would seem to have inherent authority to regulate their own procedure. Consequently, if there is no Florida Statute directing what form of pleading and practice the courts should follow, the judicial branch of the Government would appear to have authority to regulate the matter by rule or in any other manner that it sees fit." Thus, in spite of the language of Section 1, Article III, of the National Constitution, the highest court in the land did not see fit to adopt these new Federal Rules of Civil Procedure until the Congress had passed an enabling statute, repealing the former Congressional Act which required the Federal Courts to conform to State procedure in actions at law, the constitutional validity of which former statute the Supreme Court of the United States had long recognized. How much more should this Court refrain from taking any action which would attempt to repeal any of the numerous procedural statutes enacted by the Legislature under the power vested in the Legislature by Sections 20 and 21 of Article III of our Florida Constitution, the constitutional validity of which we have long recognized. This Court, while fearless in the exercise of its own judicial power, and in defending it from invasion by either of the other two grand divisions of governmental power, has al-

ways been careful not to encroach upon the legislative domain. Cotton v. Leon County, 6 Fla. 613.

No matter how desirable it might be from a practical standpoint for this Court to be vested with the exclusive power of regulating the practice and procedure in our trial courts, the fact remains that under our Constitution the Legislature can exercise that power, and this Court has never seen fit to promulgate rules which conflicted with valid existing statutes, nor should we do so without the passage of an enabling Act by the Legislature.

The question here presented is whether or not this Supreme Court has power to promulgate and put into effect rules of practice and procedure for the trial courts of this State which are inconsistent with existing statutes.

It is therefore not necessary for us to discuss the highly controversial subject of the origin, nature and extent of the inherent rule-making power of the courts, which has been so much discussed in the legal magazines for the past ten years. Suffice it to say that not only the Supreme Court, but all trial courts of general jurisdiction, are vested with rule-making powers, so long as this power is not exercised so as to conflict with the Constitution or with valid legislative Acts regulating practice and procedure. This rule-making power of the courts has been recognized ever since the early days of the English common law, but Tidd's Practice, the ninth edition of which was published in 1828, shows that the practice and procedure in the courts of England had long been a mixture of Acts of Parliament and court-made rules. Therefore it was no ·innovation when, in the Florida Constitution of 1868, it was provided, in Sections 17 and 18 of Article IV, in substance that all legislative Acts regulating the practice in courts of justice should be, not special or local, but general and of uniform operation throughout the State. Similar provisions appear

in Sections 20 and 21, Article III, of the Constitution of 1885. This Court has always recognized the full force and effect of these Constitutional provisions. And numerous statutes prescribing and regulating court procedure have been adopted by the legislature from time to time under the power thus vested.

Section 4682 C. G. L. of 1927, derived from an Act of 1868 which became Section 1308 of the Revised Statutes of 1892, provides, among other things, that the Supreme Court shall have power "To make, amend, annul or modify. rules of practice or pleadings of the Supreme Court or any other court as it may see fit, not inconsistent with law." And it was further provided that the rules so adopted "shall have the force of law until otherwise provided by the Legislature."

As shown by the Florida cases cited in the opinions already filed in this case by my associates, this Court has frequently followed and upheld the validity of this statute, and has accepted the principle that the rules promulgated by it shall not be inconsistent with law.

See also in this conection State *ex rel.* Ross v. Call, 39 Fla. 504, 22 So. 748; Sydney v. Auburndale Construction Corp., 96 Fla. 688, 119 So. 128; Ruff v. S. & F. Ry. Co., 67 Fla. 224, 64 So. 782; State *ex rel.* Fisher v. Rowe, 110 Fla. 141, 148 So. 588; Alaska Packers Association v. Pillsbury, 301 U. S. 174, 57 S. C. 682, 81 L. Ed. 988, and Bull v. Adams (C. C. A.), 17 Fed. (2d) 906, opinion by Judge BRYAN. The general subject is reviewed in 14 American Jurisprudence 355 to 372, citing numerous authorities, and on pages 357-358 the following appears:

"The power of courts to make such rules as they may deem necessary is subject to the limitation that such rules must not contravene a statute or the organic law. As against conflicting statutory provisions such rules are

without force. They must be subordinate to the law, and in case of conflict the law will prevail. This is, of course, fundamentally true when the conflict is with the organic law or with a substantial right at common law or under a statute, and it is ordinarily held to be true when the conflict is with a statute regulating procedure. This limitation is generally embodied, when the rule-making power is exercised under statutory authority, in the statute conferring such authority."

Counsel for the petitioner, The Florida Bar Association, and members of the bar opposing the granting of the petition, have filed some very able treatises on the subject here under consideration which have appeared in the law magazines, among them one by Professor John H. Wigmore, in the December, 1936, issue of the Journal of the American Jurisprudence Society; another by Mr. Frank W. Grinnell, in the August, 1940, issue of the same Journal, and another by Mr. Harry Hibschman in the November, 1937, issue of the U. S. Law Review, which I have read with interest.

One of the strongest arguments made in behalf of the petitioner is based on the independence of each of the three grand coördinate departments of government. Great stress is laid upon Article II of our Constitution, which reads:

"The powers of the government of the State of Florida shall be divided into three departments; Legislative, Executive and Judicial; and no person properly belonging to one of the departments shall exercise any powers appertaining to either of the others, except in cases expressly provided for by this Constitution."

But I would call attention to the last clause of that Article—"except in cases expressly provided for by this Constitution." I have already called attention to Sections 20 and 21 of Article III of this same Constitution, which to my mind clearly vests the Legislature with power to pass

laws regulating practice and procedure in the courts of the State. It may well be that this results in both the courts and the Legislature having concurrent authority in this field, but, as already pointed out, this Court has construed said constitutional provisions to mean that court-made rules of practice must not be inconsistent with legislative statutes, thus avoiding any unseemly clashes of authority between the judicial and legislative branches.

After a careful consideration of the authorities, especially the decisions of our own Supreme Court, as well as the able briefs of counsel both for and against the granting of the petition, I see no good reason for departing from the long established and well settled doctrine that under our Constitution this Court has no power to promulgate rules of practice to govern the trial of cases in our circuit courts and other trial courts which would be in conflict with valid legislative statutes regulating the same subject. No good reason is shown why this Court should now hold that it *has* the power to do what it has so often previously held, in clear language, that it *does not have* the power to do.

WHITFIELD, P. J., and THOMAS, J., concur.

BUFORD, J. (dissenting).—This matter is before us on petition of the Florida State Bar Association, which alleges:

"1. That the Florida State Bar Association has a membership of approximately seventeen hundred members admitted to practice law in the State of Florida.

"2. That under the authority of a resolution adopted on April 19, 1940, at the annual meeting of the Florida State Bar Association held at Jacksonville, Florida, a committee was appointed to adapt the Federal Rules of Civil Procedure to Florida practice; that said committee has prepared the new Florida Rules of Civil Procedure in accordance with said instructions.

"3. That said Florida Rules of Civil Procedure have been printed in the July issue of the Florida Law Journal; that, in the same Law Journal, a copy of this petition and of a notice of this hearing were also published; that a copy of said Law Journal was mailed by the Florida State Bar Association to every lawyer in Florida who is listed in Martindale-Hubbell Law Directory, so as to give notice to all attorneys of the time and place of the presentation of this petition, and that said Florida Rules of Civil Procedure are made a part of this petition by reference.

"4. That the Federal Rules of Civil Procedure were adopted in federal practice in September, 1938, and that in actual operation, they have been found to promote the prompt and efficient administration of justice; that it is the belief of petitioners that benefits similar to those accomplished by the Federal Rules will be produced in the courts of the State of Florida by the adoption of the new Florida Rules of Civil Procedure herewith submitted to the Court.

"5. That at present there are three different methods of practice and procedure in Florida—common law, chancery, and federal; that the appellate practice under each method is different; that the attorneys of Florida are thus burdened with numerous details and extra work which could be obviated by having one form of practice in the State; that this would result in making it possible for attorneys to give their clients more efficient service, and that the adoption of the proposed rules would doubtless result in fewer appeals to the Supreme Court of. Florida, as many of the former technicalities would be abolished.

"6. That, as a result of the delays in court caused by the present procedure in Florida, the courts are being criticized and business men are turning more to other methods of settling their business differences; that it will not only be beneficial to the legal profession to adopt the proposed

rules, but it will greatly aid the business men and other citizens of the State of Florida by giving them the possibility of speedier and more efficient service in court."

Two questions are presented for our consideration, stated as follows:

"1.  Does the necessity exist for the adaptation of the Federal Rules of Civil Procedure to the practice in State courts of Florida?

"2.  In the exercise of its rule-making power, can the Supreme Court of Florida promulgate valid rules of practice inconsistent with rules enacted by the Legislature?"

In addition to these questions, the Court had presented three (3) questions, upon which it has requested brief and argument, which had been submitted.  Those questions are as follows:

"1.  The Constitution of Florida recognizes the distinction between Common Law and Equity.  Has this Court the power in the absence of constitutional authorization to approve and promulgate the Florida Rules of Civil Procedure which propose to abolish that distinction or merge it into a 'civil action'?"

"2.  The whole theory of our statutory law in relation to procedure is grounded on a system of common law and equity.  Has this Court the power to approve and promulgate the Florida Rules of Civil Procedure, it appearing that they are not confined to the realm of procedure but in effect repeal or modify numerous statutes relating to substantive law?"

"3.  Has this Court the power to promulgate rules of procedure for the conduct of other courts in the State judicial system in the absence of statutory or constitutional authorization to do so?"

Perhaps the necessity does not exist for the adoption of

the Federal Rules of Civil Procedure to the practice in the State courts of Florida, but certainly the necessity does exist to adopt rules of civil practice and procedure which will eliminate many of the existing technicalities which hinder and delay the administration of justice. The demand of both lawyers and litigants is urgent that the courts do what is necessary to be done to so improve civil practice and procedure as to make the administration of justice more certain and to ascertain the truth and the rights of parties promptly and with less expense than may be accomplished under our present system. It appears to us as being expedient to adopt as far as possible the Federal Rules of Civil procedure, as far as they may be applicable and with such changes as are needful to attain this end, because: (1) These rules were prepared by men of wide experience and great ability, after thorough study and consideration and are found after more than two years of experience to be generally satisfactory to the bench and bar of the Federal Courts. (2) By adopting the Federal Rules we will eliminate conflicts and differences in the matters of civil procedure as practiced in the Federal Courts and as practiced in the State courts of Florida, and thereby eliminate confusion and much doubling of work of the practitioner.

So we may say that necessity for reformation exists and expediency sugests that the wise way to proceed is by the adoption of the Federal Rules of procedure with such changes as may be necessary to make them applicable to the State courts.

It appears to us that question 2 as presented by the committee and question 3 as suggested by the Court may properly be considered together.

At the outset, let us say that if the legislative enactments were adequate to meet the requirements prescribed by Section 4 of the Declaration of Rights, the question here

propounded would not be presented to this Court. Section 4 of the Declaration of Rights provides: "All Courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay." It is as much a violation of this paragraph of the Constitution to follow rules of procedure which will delay justice as it would be to follow rules of procedure which would deny justice. This Court must take judicial knowledge of facts and conditions which are known to laymen as well as to lawyers, that our present rules and statutes governing civil practice and procedure are antiquated, inadequate, and are conducive to delay in the administration of justice and result in a violation of the constitutional right of the litigant to have justice administered without delay.

We think it cannot be gainsaid that it is the duty of the judiciary to render compliance with this section of the Constitution and that it is within the power of the judiciary to make and promulgate all rules of practice and procedure necessary to the efficient performance of that duty, regardless of what the Legislature may have assumed to do in that regard.

We think it must be conceded that if the rule-making power has by the provisions of the Constitution not been vested exclusively in the Legislature that such power as may be by the Constitution impliedly vested in the Legislature is subject to the inherent power resting in the judiciary in this regard. This must be so unless the provisions of the Constitution are such as to divest the courts of this inherent power, which is not done by the provisions of our Constitution.

It must follow that if inherent rule-making power resting in the courts has not been divested by the Constitution and

the Constitution either directly or by implication recognizes such power in the courts, then the Legislature is without power to by statute place a limitation on the judicial branch of the government in this regard.

It must also be recognized that this Court has not heretofore been importuned to exercise its inherent power in this regard so as to make effective the provisions of Section 4 of the Declaration of Rights.

In assuming to exercise the inherent rule-making power we do not cast any aspersions on the Legislature, nor upon its action or lack of action in the past. Under implied authority found in the Constitution, Sections 20 and 21 of Article III, the Legislature has, at the behest of the judiciary, enacted such statutes as may have been apparently desired by the judiciary for its aid in performing its governmental functions.

In Smith v. Guckenheimer & Sons, 42 Fla. 1, 27 Sou. 900, this Court, having referred to Section 1308, Revised Statutes of Florida, now 4682 C. G. L., said:

"It will be observed that as to each power mentioned in this statute the Court is limited to such action as may *not be inconsistent with law,* except the fourth, and that relates only to prescribing forms, and gives no power whatever to require abstracts as we have done by Rule 20. These powers are much more limited in their scope than those given by the statute referred to in Robinson v. Roberts, 16 Fla. 156, and the Rule there upheld appears to have been a valid one at common law. That case is, therefore, no authority for sustaining the rule in the present case. The statute quoted is essentially a limitation upon the powers of the Court in regard to making rules. The Court has an inherent power of this nature, limited as I have stated, which cannot be divested by the Legislature, and it is also authorized by the common law to make rules. It would be

superfluous for the Legislature to *grant* them the identical
power they already possessed. By the legislation quoted the
Legislature has merely declared and confirmed the power
already possessed, and perhaps extended it so far as other
courts are concerned, but with limitations which are un-
mistakably and clearly expressed, viz;: that the rules framed
shall *not be inconsistent with law."*

. The decision in this case was followed in the case of
Holder Turpentine Co. v. M. C. Kiser Co., 68 Fla. 312,
67 Sou. 85, and in the case of Keen v. State, 89 Fla. 113,
103 Sou. 399. In the latter case it was said:

"The judicial power of the State is vested in the courts.
Section 1, Art. V, Const. Fla. But the authority to make
laws is in the Legislature of the State. Section 1, Art. III,
Const. Fla. And, while the Supreme Court has power to
make rules of practice which shall have the force of law,
it cannot make rules inconsistent with law. Section 2955,
Rev. Gen. Stat. It is true that every court has inherent
power to do all things that are reasonably necessary for the
administration of justice within the scope of its jurisdiction,
yet, nevertheless, courts are subject to valid, existing laws,
and it is generally held that the practice and procedure by
which courts shall exercise their jurisdiction, subject to con-
trolling constitutional provisions, if any, may be regulated
by statute. 11 Cyc. 739; Zimmerman v. Chicago & N. W.
Ry., 129 Minn. 4, 151 N. W. 412."

In the latter case of Bryan v. State, 94 Fla. 909, 114 Sou.
773, it was said:

"Should the Legislature seek to interfere with the in-
herent power of the Court to regulate the conduct of its
own business and by statutory enactment undertake to pre-
scribe rules conceived by it to be better adapted for the
orderly, efficient, economical administration of justice, the
effect would be a vain attempt to encroach upon the powers,

duties and functions of a coördinate and coeval branch of the government; for the power to make its own rules for the conduct of its business is inherent in the Court. It exists independent of statute. It is not absolute but subject to limitations based on reasonableness and conformity to constitutional and statutory provisions of general law. See Smith v. Guckenheimer, 42 Fla. 1, 27 So. 900; Goodwin v. Bickford, 20 Okl. 91, 93 P. 548, 129 Am. St. Rep. 729; Stevenson v. Milwaukee County, 140 Wis. 14, 121 N. W. 654, 17 Ann. Cas. 901."

We think the language above quoted is pertinent to the questions now before us. We may transpose what was said there and say that when the Court finds that the Legislature by statutory enactment has prescribed rules to regulate the conduct of the business of the courts which are conceived by the Court to be inefficient in the economical and prompt administration of justice, the Court may prescribe and substitute its own rules for those so prescribed by the Legislature because the Legislature is without power to encroach upon the powers, duties and functions of a coördinate and coeval branch of the government.

This is true because the power to make its own rules for the conduct of its business is inherent in the Court. It exists independent of statute.

In the Petition of Jacksonville Bar Association, 125 Fla. 175, 169 So. 674, we said:

"Courts have inherent power to prescribe rules of practice and rules to regulate proceedings and to facilitate administration of justice, but all rule-making power of inferior courts is subject to supervisory control of Supreme Court."

In the matter of Petition of State Bar Association, *et al.*, 134 Fla. 851, 186 So. 280, we held:

"Where the Legislature for over 100 years had regulated admissions to the bar and disbarment of attorneys for un-

professional conduct, and the Supreme Court had not exercised its prerogative to regulate such matters but had acquiesced in legislative regulation, Supreme Court would not adopt rules which would repeal legislative Acts and prescribe new requirements for admission to bar and rules relating to disbarment as long as Legislature had not itself withdrawn from such field of regulation."

In this case, without saying so in terms, we differentiated between the powers inherent in the Court to prescribe rules of practice and rules to regulate proceedings and to facilitate administration of justice and the power to promulgate rules contrary to statutory provisions affecting private rights. The right involved in that case was that of a person to be admitted to the bar to practice law in Florida and to continue to exercise the right after having been admitted.

In this connection we may say that it appears to be agreed by all that the courts are without power to change or modify any valid statute enacting substantive law. The effort to adopt and promulgate a rule of court which would deprive a citizen of any of his constitutional or statutory rights to life, liberty or property would be of no avail. But the courts may prescribe reasonable rules by which all such rights may be protected or enforced.

Aside from the provisions of Section 4 of the Declaration of Rights heretofore referred to, the provisions of Article II of the Constitution, reading as follows: "The powers of the government of the State of Florida shall be divided into three departments: Legislative, Executive and Judicial; and no person properly belonging to one of the departments shall exercise any powers appertaining to either of the others, except in cases expressly provided for by this Constitution," by very definite implication recognized in the Court that authority to prescribe rules of practice and rules to regulate proceedings and to facilitate the administration of

justice as was declared to be true in the matter of Petition of Jacksonville Bar Association, 125 Fla. 175, 169 So. 674.

As the implied power in the Legislature under the Constitution to make rules for the government of practice and procedure in courts is evident but is not exclusive because such power is inherent in the judiciary and is not divested by the Constitution but is impliedly recognized and preserved by Section 4 of the Declaration of Rights and Article II of the Constitution, legislative enactments in this regard are binding upon the courts until the appropriate tribunal (the Supreme Court) shall have held such legislative provisions to be inadequate to meet the necessities of the judiciary in the performance of the functions of government imposed upon it by the Constitution and shall have, pursuant to such holding, promulgated rules necessary to the prompt, efficient and economical discharge of its governmental functions. This is true because what is implied in the Constitution or statute is as much a part of it as what is expressed. See U. S. v. Babbitt, 66 U. S. 55, 17 L. Ed. 94; Luria v. United States, 231 U. S. 9, 58 L. Ed. 101.

In State ex rel. Buckwalter v. City of Lakeland, 112 Fla. 200, 150 Sou. 208, we said:

"It may be said as a general rule that whatever power is conferred upon the courts by the Constitution cannot be enlarged or abridged by the Legislature. Robinson v. Durant, 36 Utah 63, 104 Pac 764; 15 C. J. 731; In Re: Albori, 95 Cal. A. 42, 272 Pac. 321. This rule is also stated as follows: 'The Legislature cannot lawfully interfere with the subsistence of the judicial power and discretion vested in the courts by the Constitution nor hamper nor hinder the free and independent exercise thereof.' See Spafford v. Brevard County, 92 Fla. 617, 110 Sou. 451."

The courts have, in many cases, asserted the inherent

power in the judiciary to prescribe rules of practice and procedure. See Solimeto v. State, 122 N. E. 578, 188 Ind. 170; Roberts v. Donahoe, 191 Ind. 98, 131 N. E. 33; State v. Roy, 40 New Mexico 397, 60 Pac. (2d) 646; *In Re:* Constitutionality of Section 251.18, 204 Wis. 501, 236 N. W. 7112; Kolkman v. People, 89 Cal. 8, 300 Pac. 575; State *ex rel.* Foster-Wyman Co. v. Superior Court, 148 Wash. 1, 267 Pac. 770.

In most of these cases the rules referred to were promulgated by the courts pursuant to so-called legislative enabling Acts with the contestants urging that such legislative Acts attempted to confer legislative power on the judiciary.

In all the cases this theory was held without merit, the opinion being based upon the holding that the rule-making power is inherent in the courts and is a judicial function.

In the Donahoe case, *supra,* following the Solemito case, *supra,* the Court held a legislative Act attempting to promulgate a rule of practice contrary to a court rule therefore promulgated to be void and unconstitutional because not within the province of the Legislature. In this connection see "The New Deal for Justice" by Kates, 20 A. B. A. Journal 148; also "Legislature Has No Power in Procedural Field" by John H. Wigmore in Journal of American Judicature Society, issue of December, 1936.

Now, as to whether or not the rule-making power inherent and impliedly preserved by the Constitution in the Supreme Court extends to and includes the power of the Supreme Court to prescribe and promulgate rules of practice and procedure in the inferior courts, the most enlightening and best reasoned opinion which has come to our attention is in the case of People v. Callopy, 358 Ill. 11, 192 N. E. 634. In that opinion the court gives a succinct and concise history of our institutions at the time of adoption of the Constitu-

tion and under constitutional provisions in all material respects like our own the court said:

"It follows from what has been hereinbefore set out that the Supreme Court of this State is vested by the Constitution with authority to regulate practice and procedure of inferior courts so far as the question here is involved." And further said:

"We are convinced that viewed from the historical background of the power of courts of last resort and from the constitutional investiture of power, this court had and has power to promulgate Rule 27 of the Rules of this Court and that rule is valid."

In the case of Stepanian v. Asadourian, 283 Ill. App. 495, 1 N. E. (2d) 753, the Court said:

"The right of the Supreme Court to promulgate rules of procedure binding upon itself and all inferior courts is not debatable."

As to the question as to whether or not, in the absence of constitutional authorization to approve and promulgate the proposed Florida Rules of Civil Procedure, the rules would be invalid because they would abolish the constitutional distinction between law and equity and because such rules would merge both law and equity in the civil actions, we are brought to the conclusion that the rules do not abolish that distinction, but the distinction is recognized and preserved in the rules. The substantive rights of litigants grounded upon an equitable cause of action are not altered, nor are the substantive rights of litigants grounded upon a legal cause of action altered.

Under Section 2 of Article III of the Constitution of the United States it is provided:

"The judicial power shall extend to all cases in law and equity arising under the Constitution, the Laws of the

United States and treaties made, or which shall be made, under their authority."

So it is seen that the distinction between law and equity is preserved in the Federal Constitution. This question has been raised in the Federal courts and it has there been held that the distinction is not affected by the Federal Rules of Procedure. See Frazer v. Geise, 1 Fed. Rules, Decision 267; Ballanac v. Plastic-Kraft Novelty Co. (D. C.), 30 Fed. Sup. 37; Williams v. Collier (D. C.), 32 Fed. Sup. 321; Grauman v. City Co. of New York, 31 Fed. Sup. 172.

It appears to us that this question has also been compliedly settled by the Supreme Court of the United States in the matter of Walter Peterson as Receiver of the Inter-State Coal Co., Inc., Petitioner, 123 U. S. 300, 64 L. Ed. 919. There the Court said:

."The command of the 7th Amendment that 'the right of trial by jury shall be preserved' does not require that old forms of practice and procedure be retained. Walker v. New Mexico & S. P. R. Co., 165 U. S. 593, 596, 41 L. Ed. 837, 841, 17 Sup. Ct. Rep. 421, 1 Am. Neg. Rep. 768. Compare Twining v. New Jersey, 211 U. S. 78, 101, 53 L. Ed. 97, 107, 29 Sup. Ct. 14. It does not prohibit the introduction of new methods for determining what facts are actually in issue, nor does it prohibit the introduction of new rules of evidence. Changes in these may be made. New devices may be used to adapt the ancient institution to present needs and to make of it an efficient instrument in the administration of justice. Indeed, such changes are essential to the preservation of the right. The limitation imposed by the amendment is merely that enjoyment of the right of trial by jury be not obstructed, and that the ultimate determination of issues of fact by the jury be not interfered with."

Under the proposed Rules all substantive rights of parties

will be preserved and only the court practice and procedure by which those rights are enforced or protected will be changed. Matters cognizable in equity will remain cognizable in equity and matters cognizable in law will so remain.

Our conclusion is that existing conditions demand constructive reform as heretofore indicated in the rules of civil practice and procedure and that the Supreme Court of Florida possesses the inherent power recognized and preserved by implication at least in the Constitution to promulgate rules of practice and procedure for its own governance and for the governance of the inferior courts of this State which are needful to the speedy, economic and certain administration of justice.

CHAPMAN, J., concurs.

TERRELL, C. J., and BROWN, J., dissent.